[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
September 27, 2005
THOMAS K. KAHN
CLERK

_____

No. 05-10640
Non-Argument Calendar

_____

D. C. Docket No. 04-00171-CR-1-CG

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

QUAN CHAU,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

(September 27, 2005)

Before BLACK, CARNES and PRYOR, Circuit Judges.

PER CURIAM:

Quan Chau appeals his 57-month concurrent sentences imposed for

convictions on: one count of conspiracy to possess with intent to distribute more than 700 units of 3, 4-methylenedioxymethamphetamine (usually known as MDMA or ecstasy) in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 841(a)(1) and 846; three counts of possession with intent to distribute MDMA in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1); and one count of attempt to distribute MDMA in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 841(a)(1) and 846. Chau contends that the use of hearsay at his sentencing hearing violated his Sixth Amendment right of confrontation, and that the enhancement of his sentence based on facts he had not admitted violated his Sixth Amendment right to trial by jury. We affirm.

## I.

A federal grand jury indicted Chau on the five counts we have described. Without an agreement he pleaded guilty to all counts. At the plea colloquy, the government presented a factual basis for the plea. At the sentencing hearing, the same facts were established through the testimony of a police officer.

These are those facts. In July 2003 police in Mobile, Alabama identified a confidential informant who agreed to participate in an investigation of MDMA distribution. The next month the informant contacted Trung Truong. The informant asked Truong for 100 tablets of MDMA and discussed with Truong the

2

possibility of obtaining 200 to 300 tablets per week. Truong said that he could supply those amounts. Later the informant wanted 200 tablets, but Truong said he had only 150, and they reached a deal for that amount. In September 2003 the informant purchased 200 more MDMA tablets from Truong.

Truong was arrested, and he identified Chau as his source of supply for MDMA. Then Chau was arrested, and he identified Truong as his source. Chau stated that on two occasions, following Truong's instructions, he had picked up MDMA tablets from an unidentified man in Mississippi and delivered those drugs to Truong.

The Mobile police later learned that, during a surveillance operation FBI agents in Mississippi had stopped Chau in his vehicle, and Chau had given a female passenger 129 MDMA tablets to conceal. A search of the vehicle had revealed a loaded .22 caliber handgun under the driver's side front floor mat. Chau had admitted to the FBI agents that the gun and the drugs were his. Chau also had admitted to them that for six months he had been delivering 50 to 60 tablets, weekly or biweekly, from Alabama to someone in Mississippi.

At the plea colloquy, the government said that it expected to establish Chau was accountable for at least 1,709 MDMA tablets. Chau agreed that the government could prove the necessary elements of the crimes charged, but he said

3

that he disputed for sentencing purposes the drug quantity and the firearm possession. The district court accepted Chau's plea and adjudicated him guilty.

The presentence investigation report held Chau accountable for 1,637 units[1] of MDMA. Under the sentencing guidelines, the quantity of drugs involved in an offense figures into the calculation of the offense level. U.S.S.G. § 2D1.1 (Nov. 2004). For purposes of calculating drug quantity, MDMA is converted to its equivalency in marijuana. See id. According to the conversion tables in the guidelines, the weight of 1,637 units of MDMA is 409.25 grams, and this amount is equivalent to 204.624 kilograms of marijuana. Id.

Using these calculations, the PSI set Chau's base offense level at 26, see U.S.S.G. § 2D1.1(c)(7). The PSI then added two points for the possession of a dangerous weapon, see U.S.S.G. § 2D1.1(b)(1), and subtracted three points for acceptance of responsibility, see U.S.S.G. § 3E1.1. These calculations netted out to an offense level of 25. Chau had no criminal history points. The result was a guideline range of imprisonment of 57–71 months.

At the sentencing hearing, Chau contended that he could be sentenced based

---

[1]At the plea colloquy, government counsel referred to the MDMA as "tablets," and at the sentencing hearing, the police officer testifying for the government referred to the MDMA as "units." According to the Typical Weight Per Unit Table in the guidelines manual, one tablet of MDMA weighs 250 milligrams. U.S.S.G. § 2D1.1(c)(11). The guidelines refer to 250 milligrams of MDMA as a "unit" for quantity calculations. See id. So, a tablet and a unit are interchangeable terms for calculation of quantity purposes. See id.

4

only on the facts set out in the charges to which he had pleaded. He objected to the drug quantity relied on in the PSI, which was 1637 units. Chau argued that because the conspiracy count, to which he had pleaded guilty, alleged that he had conspired to distribute "more than 700 units," he should be sentenced based on no more than the 700 units. That argument is a non-sequitur, because "more than" means more than, not "not more than."

Chau also objected to the sentencing enhancement for possession of a weapon. The indictment did not mention a weapon, Chau did not plead guilty to any offense related to a weapon, and at the plea hearing he disputed application of the weapons enhancement. At the same time he was doing that Chau told the district court he was not denying what was in the Mississippi arrest report, which stated that Chau had a weapon in the vehicle when he was arrested there.

At the sentencing hearing the government called Joseph Wolfe, a Mobile police officer assigned to a Drug Enforcement Administration task force, to testify. Wolfe testified that he had participated in the investigation of Chau, and he relayed to the court the informant's statements to him about the informant's dealings with Truong. Wolfe's testimony about what the informant had told him matched the factual basis that government counsel had provided at the plea colloquy.

Significantly for sentencing purposes, Wolfe testified that 129 units of

5

MDMA had been recovered from Chau's vehicle in Mississippi, and Chau had admitted to law enforcement in Mississippi that, weekly or biweekly for a six month period, he had delivered 50 to 60 units of MDMA to someone in that state. Wolfe also testified that a firearm had been found in Chau's vehicle when FBI agents stopped him in Mississippi. Chau objected a number of times on hearsay grounds to Wolfe's testimony, but the court overruled those objections. He did not object on Confrontation Clause grounds.

Based on Wolfe's testimony, the government proposed a drug quantity of 1,637 tablets of MDMA. Chau agreed that the math was correct but renewed his hearsay objection. The court overruled it again and found by a preponderance of the evidence that the amount of drugs attributed to Chau in the PSI was correct. The court reasoned that the Mississippi activities were either part of the conspiracy or relevant to it. The court stated that it would question whether Chau was entitled to the acceptance of responsibility reduction if he was denying his Mississippi arrest and the facts in that arrest report. For that or some other reason, Chau did not deny the accuracy of the report's contents.

According to the government, the report stated that Chau had mentioned to the FBI agents the recent shooting of a Vietnamese man and explained that he was carrying a gun because it was dangerous in Mississippi. The court found by a

preponderance of the evidence that Chau had possessed a gun in connection with drug transactions, that he had carried it for protection while dealing drugs. Chau argued that the indictment had not charged him with any firearm related offense, and therefore the arrest report did not rise to the level of proof necessary to support the enhancement. The court disagreed.

Using the guidelines as advice, which it decided to follow, the court sentenced Chau to 57 months incarceration (the bottom of the guidelines range) on each count to be served concurrently and to be followed by 3 years supervised release.

## II.

Chau contends that the use of hearsay at his sentencing hearing violated his Sixth Amendment right of confrontation. He also contends that his Sixth Amendment right to a jury trial was violated when the district court enhanced his sentence using facts that he had not admitted. We review constitutional challenges to a sentence de novo. United States v. Lyons, 403 F.3d 1248, 1250 (11th Cir. 2005).

## A.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."

7

U.S. Const., Amend. VI.  When testimonial evidence is presented against a defendant at trial, the Sixth Amendment right of confrontation cannot be denied unless the witness is unavailable and the defendant had a prior opportunity to cross-examine him.  Crawford v. Washington, 541 U.S. 36, 68, 124 S. Ct. 1354, 1374 (2004).

Chau contends that Crawford, 541 U.S. 36, 124 S. Ct. 1354,  applies to sentencing proceedings as well as trials because a sentencing hearing "is obviously a criminal prosecution."  Appellant's Br. at 9.  He argues that because the district court considered evidence that should have been excluded under the Crawford decision, it miscalculated his sentence under the guidelines.

In the district court Chau made objections on hearsay grounds, but did not mention the Confrontation Clause.  Because a hearsay objection does not preserve the Crawford issue, our review is only for plain error.  United States v. Luciano, 414 F.3d 174, 178 (1st Cir. 2005) ("As Luciano did not raise this Confrontation Clause or Crawford-type claim in the proceedings below—defense objections were framed as hearsay and reliability objections—we review for plain error."); accord United States v. Olano, 507 U.S. 725, 731–32, 113 S. Ct. 1770, 1776–77 (1993).

As the name suggests, any plain error must be "plain." United States v. Monroe, 353 F.3d 1346, 1349 (11th Cir. 2003).   "At a minimum, court[s] of

appeals cannot correct an error pursuant to Rule 52(b) [permitting plain error review] unless the error is clear under current law."  United States v. Olano, 507 U.S. 725, 734, 113 S. Ct. 1770, 1777 (1993).   As we have repeatedly recognized, "[a]n error cannot meet the 'plain' requirement of the plain error rule if it is not 'clear under current law.'" United States v. White, 416 F.3d 1313, 1319 (11th Cir. 2005) (quoting United States v. Aguillard, 217 F.3d 1319, 1321 (11th Cir. 2000)); accord United States v. Hernandez-Gonzales, 318 F.3d 1299, 1302 (11th Cir. 2003).  From that principle flows "the law of this circuit that, at least where the explicit language of a statute or rule does not specifically resolve an issue, there can be no plain error where there is no precedent from the Supreme Court or this Court directly resolving it."  United States v. Lejarde-Rada, 319 F.3d 1288, 1291 (11th Cir. 2003) (citation omitted).

Before Crawford the law was plainly the opposite of Chau's position.  It was established in this and other circuits that the admission of hearsay at sentencing did not violate the Confrontation Clause.  Chandler v. Moore, 240 F.3d 907, 918 (11th Cir. 2001) (admission of hearsay testimony at a capital sentencing hearing does not violate the Confrontation Clause so long as the defendant has an opportunity to rebut it); see also United States v. Zlatogur, 271 F.3d 1025, 1031 (holding that "the law of this Circuit clearly provides that reliable

9

hearsay can be considered during sentencing" (citing United States v. Wilson, 183 F.3d 1291, 1301 (11th Cir. 1999) ("'A court may consider any information (including hearsay), regardless of its admissibility at trial, in determining whether factors exist that would enhance a defendant's sentence, provided that the information is sufficiently reliable.'") (citing United States v. Castellanos, 904 F.2d 1490, 1495 (11th Cir. 1990)); accord United States v. Brigman, 350 F.3d 310, 315 (3d Cir. 2003) (holding that "[h]earsay is fully admissible at a sentencing hearing, so long as it has sufficient indicia of reliability") (citations omitted); Todd v. Schomig, 283 F.3d 842, 853 (7th Cir. 2002) (concluding that "[h]earsay may be admitted at sentencing, even in death penalty cases, without violating the Constitution.") (citations omitted); Smith v. United States, 206 F.3d 812, 813 (8th Cir. 2000) (holding that hearsay evidence, as long as a defendant has the opportunity to rebut or explain it, is admissible at sentencing because "the sentencing process does not carry the same evidentiary protections guaranteed during a criminal trial") (citations omitted).

In Williams v. New York, 337 U.S. 241, 251, 69 S. Ct. 1079, 1085 (1949), the Supreme Court approvingly referred to the "age-old practice of seeking information from out-of-court sources to guide [a court's] judgment toward a more enlightened and just sentence." Id. The Supreme Court has also held that a

10

sentencing court may conduct an expansive inquiry and is free to consider a variety of information from an array of sources. See Nichols v. United States, 511 U.S. 738, 747, 114 S. Ct. 1921, 1927–28 (1994). "[O]nce the guilt of the accused has been properly established, the sentencing judge, in determining the kind and extent of punishment to be imposed, is not restricted to evidence derived from the examination and cross-examination of witnesses in open court . . . ." Williams v. Oklahoma, 358 U.S. 576, 584, 79 S. Ct. 421, 426 (1959). Different evidentiary rules apply at sentencing because the sentencing process is "less exacting" than the process of establishing guilt. See Nichols, at 747, 114 S. Ct. at 1927.

The question before this Court is whether the Crawford rule applies in the sentencing context with sufficient clarity that the failure to follow it at sentencing is plain error. Crawford considered and decided issues involving the use of testimonial evidence at trial, not at sentencing. See id. at 59, 124 S. Ct. at 1369 ("Our cases have thus remained faithful to the Framers' understanding: Testimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine.") (emphasis added). The Crawford opinion does not state that its rule applies at sentencing; it does not refer to sentencing. While that rule may eventually be extended to the sentencing context, that has not happened yet.

11

The other circuit courts to consider this question have unanimously concluded that Crawford does not alter the pre-Crawford law that the admission of hearsay testimony at sentencing does not violate confrontation rights. See United States v. Roche, 415 F.3d 614, 618 (7th Cir. 2005) (concluding that Crawford does not change the fact that "witnesses providing information to the court after guilt is established are not accusers within the meaning of the confrontation clause"); United States v. Luciano, 414 F.3d 174,179 (1st Cir. 2005) (stating that "[n]othing in Crawford requires us to alter our previous conclusion that there is no Sixth Amendment Confrontation Clause right at sentencing"); United States v. Martinez, 413 F.3d 239, 243 (2d Cir. 2005) (holding that the constitutional right of confrontation does not bar the admission of hearsay testimony at sentencing proceedings and that neither Crawford nor Booker provides a basis to question prior Supreme Court decisions that expressly approved the use of hearsay at sentencing).

The important point, however, is that there is no precedent from this Court or from the Supreme Court establishing that the Confrontation Clause prohibits the admission of hearsay evidence at sentencing proceedings. In the "absence of any controlling precedent" supporting the proposition that there was error, United States v. Lejarde-Rada, 319 F.3d 1288, 1291 (11th Cir. 2003), the district court's admission of hearsay testimony at Chau's sentencing hearing cannot be plain error.

12

See id.; see also United States v. Aguillard, 217 F.3d 1319, 1320 (11th Cir. 2000) (even where other circuits are split on the issue, absent decisions from the Supreme Court or this Court establishing error there can be no plain error); United States v. Humphrey, 164 F.3d 585, 588 (11th Cir. 1999) (same).

**B.**

Chau also contends that, even when the sentencing guidelines are applied in an advisory fashion, the Sixth Amendment right to a jury trial prohibits the sentencing court from making factual determinations that go beyond a defendant's admissions. The Supreme Court rejected this idea in Booker, 125 S. Ct. 738. As we have explained, "all nine [justices] agreed that the use of extra-verdict enhancements in an advisory guidelines system is not unconstitutional." United States v. Rodriguez, 398 F.3d 1291, 1301 (11th Cir. 2005), rehearing en banc denied by 406 F.3d 1261 (11th Cir. 2005), cert. denied, 545 U.S. ___, 125 S. Ct. 2935 (Jun 20, 2005).

The sentencing hearing occurred two weeks after the Booker decision was issued, and the court complied with it. The court specifically stated at sentencing that it had "considered the statutory purposes of sentencing and the guideline range, which is advisory," Tr. Vol. 3, p.21 (emphasis added), and it decided that the guidelines range was appropriate under the circumstances. The court did find, by a

13

preponderance of the evidence, facts that went beyond the letter of the charges contained in the indictment to which Chau pleaded guilty. It was okay for the court to do that because it applied the guidelines in an advisory way. Nothing in <u>Booker</u> is to the contrary.

**AFFIRMED.**