[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 15, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-13024
Non-Argument Calendar
_____

D. C. Docket No. 03-00056-CR-5-MCR

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CLINTON LEE BENTON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

**(February 15, 2006)**

Before DUBINA, CARNES and HULL, Circuit Judges.

PER CURIAM:

Clinton Lee Benton appeals his 151-month sentence for conspiracy to

manufacture, distribute and possess with intent to distribute 500 grams or more of a mixture or substance containing methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(viii) and 846.  We AFFIRM.

## I.

In March 2004 Benton pleaded guilty to count one of an indictment alleging the methamphetamine conspiracy.  The presentence investigation report (PSI) determined that the drug weight for which Benton should be held responsible was 6,000 grams (six kilograms) of methamphetamine.  That determination was based upon (1) Benton's admission that on three occasions he had delivered at least 10 gallons of anhydrous ammonia to co-conspirator Michael Sherrod for use in making methamphetamine (30 gallons total) and (2) Sherrod's anticipated testimony that one gallon of anhydrous ammonia could produce approximately 200 grams of a mixture containing methamphetamine.

Benton objected to the PSI's drug weight computation and its use of Sherrod's testimony.  The addendum to the PSI indicates that Benton stated in his written objections to the PSI that Sherrod had told him that four ounces (113.4 grams) of methamphetamine could be produced from one gallon of anhydrous ammonia.[1]

---

[1] In his brief before this court, Benton denies making that statement to the probation officer.  (Appellant's Br. at 11.)  At the sentencing hearing, however, Benton did not object

2

At the sentencing hearing Benton introduced expert testimony to undermine the reliability of Sherrod's testimony about how much methamphetamine he could produce from a given quantity of anhydrous ammonia. The expert, Dr. James T. Booker, Ph.D., testified on direct: "You can't make an estimate of how much methamphetamine can be made from a quantity of anhydrous ammonia, because anhydrous ammonia is not one of the precursors." (Transcript at 24.) During cross, Dr. Booker stated in reference to the conspirators in this case: "They can say how much anhydrous they used. They just can't tell you how much methamphetamine can be made from a given quantity of that. I mean, if you start with a gallon [of anhydrous ammonia], you can't say, in fact, that you can make 100 grams or 20 grams or 200 grams [of methamphetamine] and do that with any

_____

when the Government represented in its closing argument that Benton should be held accountable for at least 113.4 grams of methamphetamine per gallon of anhydrous ammonia based on his representation to the probation officer, nor did he object when the trial court used that ratio to calculate the total drug quantity. Moreover, in his rebuttal to the government's response to his request to hire an expert witness, Benton clearly stated: "Michael Sherrod, the manufacturer of most of the methamphetamine, told the defendant that four ounces (113.4 grams) of methamphetamine could be produced from one gallon of anhydrous of ammonia." (Doc. 124 at 4.)

We note in passing a glaring error in the government's brief concerning the following statement at the sentencing hearing: "At the very minimum, Judge, the defendant told the probation officer that he had been told by Mr. Sherrod that an individual could manufacture four ounces of meth which would be equivalent to 113.4 grams . . . for using one gallon of anhydrous ammonia. So at least, Judge, his knowledge of that information is what he should be held to. He anticipated that." The government incorrectly attributes that statement to Benton's counsel not once but twice. (Appellee's Br. at 6, 11.) In fact, it was the government's trial counsel who made that statement. (Transcript at 111–12.) We expect more accuracy from counsel who appear in this Court.

3

precision or accuracy because it's not scientifically [ascertainable]." (Id. at 26.)

Sherrod testified that he could produce approximately 200 grams of methamphetamine using one gallon of anhydrous ammonia. Sherrod also stated that Benton made three deliveries to him and that the total amount of anhydrous ammonia delivered was 27.5 gallons. An agent with the Drug Enforcement Administration testified that two other methamphetamine chefs, who had purchased anhydrous ammonia from Sherrod and had been prosecuted separately, had claimed to be able to make 225 grams and between 160 and 250 grams of methamphetamine per gallon of anhydrous ammonia.

The court determined that Sherrod's testimony that he produced 200 grams of methamphetamine with each gallon of anhydrous ammonia supplied to him was unreliable because "[t]here was nothing from Mr. Sherrod about any failed production." (Transcript at 124.) Instead, the court found that "the more reasonable drug weight" was based on Benton's admission to the probation officer that four ounces of methamphetamine (113.4 grams) could be made with each gallon of anhydrous ammonia. (Id.) Relying on that methamphetamine/anhydrous ammonia ratio and Sherrod's testimony that Benton delivered a total of 27.5 gallons of anhydrous ammonia to him, the court determined that Benton should be held responsible for 3,118.5 grams (3.1 kilograms) of methamphetamine substance.

4

The resulting base offense level was 34.  See United States Sentencing Guidelines § 2D1.1(c)(3) (Nov. 2004) ("At least 1.5 KG but less than 5 KG of Methamphetamine").  The court applied a two level enhancement for transportation of a hazardous waste, see id. § 2D1.1(b)(6)(A)(ii), and a three level reduction for acceptance of responsibility, see id. § 3E1.1, to reach an adjusted offense level of 33.  Based on a criminal history category of II, the resulting guideline range was 151-188 months.  The court sentenced Benton to the lowest point of that range.

## II.

Benton first contends that the district court incorrectly determined the amount of methamphetamine that could be produced from a given amount of anhydrous ammonia in light of Dr. Booker's testimony that such a determination was not reliable.  He did not specifically object to the district court's use of his statement, contained in the PSI addendum, that Sherrod told him one gallon of anhydrous ammonia could make four ounces (113.4 grams) of methamphetamine; however, Benton did lodge a general objection to the court's drug quantity determination.  Accordingly, the government had the burden to establish the drug quantity by a preponderance of the evidence.  United States v. Rodriguez, 398 F.3d 1291, 1296 (11th Cir. 2005), cert. denied, __ U.S. __, 125 S. Ct. 2935 (2005).  We

review the district court's drug quantity determination for clear error.  Id.

"Where there is no drug seizure or the amount seized does not reflect the scale of the offense, the court shall approximate the quantity of the controlled substance."  U.S.S.G. § 2D1.1 cmt. n.12.  The court's approximation should produce a "fair, accurate, and conservative estimate[] of the quantity of drugs attributable to a defendant" and should not be "merely speculative."  United States v. Zapata, 139 F.3d 1355, 1359 (11th Cir. 1998) (marijuana conspiracy).  The court may consider "evidence offered at sentencing to establish the amount of [a drug] that could have been produced by the defendants' conspiracy."  United States v. Carroll, 6 F.3d 735, 742 (11th Cir. 1993) (methamphetamine conspiracy).  Moreover, the sentencing court "may properly estimate drug quantity based on available precursors when other necessary ingredients are absent" and "may also estimate drug quantity based on the most abundant chemical even if less[] abundant precursors are also present."  United States v. Smith, 240 F.3d 927, 931 (11th Cir. 2001) (methamphetamine conspiracy).

We conclude that the district court did not clearly err by calculating the drug quantity attributable to Benton.  The sentencing guidelines instruct the sentencing court to "approximate" the drug quantity, and our case law authorizes the court to use drug precursors and other ingredients such as anhydrous ammonia in doing so.

6

The court found that Sherrod's testimony that he could produce 200 grams of methamphetamine from each gallon of anhydrous ammonia was unreliable because he did not account for botched batches. In that respect, the court credited Dr. Booker's testimony. The court then used a significantly more conservative estimate that was offered by Benton himself (albeit to undermine Sherrod's testimony), and Benton did not object to the court's use of that estimate.

Given Sherrod's testimony of his actual practices and yields, as well as the DEA agent's testimony about other methamphetamine cooks in related cases, we cannot agree with Benton that the district court clearly erred in finding Benton responsible for a much lower drug quantity estimate than the evidence produced at the sentencing hearing could have supported, even in light of Dr. Booker's testimony. Accordingly, we affirm the district court's finding that approximately 3.1 kilograms of methamphetamine substance were attributable to Benton.

**III.**

Benton also contends under United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005), that the district court violated his Sixth Amendment right to trial by jury by making a drug quantity determination that exceeded the amount stated in count one of the indictment to which he pleaded guilty. Because Benton asserts constitutional Booker error for the first time on appeal, we review for plain error.

Rodriguez, 398 F.3d at 1298. Under that standard, we must first determine whether the district court committed "'(1) error, (2) that is plain, and (3) that affects substantial rights.'" Id. (quoting United States v. Cotton, 535 U.S. 625, 631, 122 S. Ct. 1781, 1785 (2002)). Even if all three of those conditions are met, our discretion to notice the error is not triggered unless "'(4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.'" Id. (quoting Cotton, 535 U.S. at 631, 122 S. Ct at 1785)).

In this case, we need to go no further than the first prong of plain error review. The court in this case applied the guidelines in an advisory fashion and found the drug quantity by a preponderance of the evidence. See Part II, above. It was therefore not error under Booker for the court to enhance Benton's sentence based on its drug quantity determination. See Rodriguez, 398 F.3d at 1301 (stating that the use of extra-verdict enhancements "remains a constitutional part of guidelines sentencing in the post-Booker era"); see also United States v. Chau, 426 F.3d 1318, 1324 (11th Cir. 2005) ("The court did find, by a preponderance of the evidence, facts that went beyond the letter of the charges contained in the indictment to which Chau pleaded guilty. It was okay for the court to do that because it applied the guidelines in an advisory way. Nothing in Booker is to the contrary.").

8

**AFFIRMED.**