[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
May 24, 2006
THOMAS K. KAHN
CLERK

No. 05-12652
Non-Argument Calendar

_____

D. C. Docket No. 03-20483-CR-MGC

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DEANA HONEYCUTT,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(May 24, 2006)

Before CARNES, PRYOR and FAY, Circuit Judges.

PER CURIAM:

Deanna Honeycutt appeals her 188-month sentence for conspiracy to import cocaine, in violation of 21 U.S.C. §§ 952(a), 960(b)(1)(B), and 963. Honeycutt argues on appeal that the district court plainly erred in determining drug amount for purposes of calculating her offense level. For the reasons set forth more fully below, we affirm.

A federal grand jury returned a fifth superseding indictment charging Honeycutt, along with ten co-conspirators, with conspiracy to import five kilograms or more of cocaine into the United States, in violation 21 U.S.C. §§ 952(a), 960(b)(1)(B), and 963 ("Count I"), and conspiracy to possess five kilograms or more of cocaine with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii) and 846 ("Count II"). This superseding indictment also charged Honeycutt individually with two counts of importing five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 952(a) and 960(b)(1)(B) ("Counts X & XII"), and two counts of possessing with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(ii) ("Counts XI & XIII").

In January 2005, during her second scheduled plea colloquy,[1] Honeycutt informed the district court that she wished to plead guilty to Count I of her

_____

[1] The government explained at the beginning of this hearing that Honeycutt did not appear for her original plea hearing, but that she later voluntarily surrendered.

superseding indictment. Although the parties had not entered into a written plea agreement, the government informed the court that it intended to dismiss Honeycutt's remaining counts and not seek a sentence enhancement for obstruction of justice based upon Honeycutt's failure to appear at her original plea colloquy. Also during this plea colloquy, the government proffered that it could have established during trial the following facts: (1) Honeycutt was a member of a conspiracy to use cruise-ship passengers to smuggle cocaine from a location in the Caribbean to South Florida and Bermuda; and (2) as one of these cruise-ship passengers, Honeycutt agreed to transport at least 15-kilogram amounts of cocaine into the United States or Bermuda on four separate occasions and one 5-kilogram amount during a different trip, all from April 2001 through September 2002. When the court asked Honeycutt whether she agreed with this proffer, Honeycutt responded affirmatively and plead guilty to the conspiracy offense in Count I.

Honeycutt's presentence investigation report ("PSI") recommended that she be held accountable for a total of 75 kilograms of cocaine, resulting in a base offense level of 36, pursuant to U.S.S.G. § 2D1.1(c)(2) (setting base offense level for drug offenses involving at least 50 kilograms, but less than 150 kilograms of cocaine). With a total offense level of 38 and a criminal history category of IV, Honeycutt had a guideline range of 324 to 405 months' imprisonment.

3

In a "Memorandum in Aid of Sentencing," Honeycutt discussed, among other things, that the PSI's calculation of drug amount was based on her "self-reported" participation in five trips involving an average of 15 kilograms of cocaine. She also conceded that this drug amount was based solely on instances where law-enforcement officers actually made seizures. Honeycutt, however, questioned whether "mathematical averages of this sort pass muster with the Sixth Amendment." Additionally, Honeycutt contended that, because her "self-reporting" set the number of trips used in calculating this amount, the court should conclude that only the amounts she carried on her body were reasonably foreseeable to her and that she, therefore, only should be held accountable for less than 50 kilograms of cocaine, resulting in a base offense level of 34.

On April 27, 2005, at sentencing, Honeycutt again objected to the methodology used by the government in calculating the amount of cocaine that was attributable to her. Honeycutt also contended that she was not physically capable of carrying this drug amount and that she only should be held accountable for 36 kilograms of cocaine. The government, in responding to this objection to drug amount, relied, without objection, on (1) the government's proffer and Honeycutt's admission during the change-of-plea hearing, (2) statements in the PSI, and (3) proffered statements made by co-conspirators in their own cases.

The court found that the PSI had correctly calculated Honeycutt's base offense level as 36 under § 2D1.1(c)(2).  After concluding that Honeycutt had not obstructed justice, pursuant to U.S.S.G. § 3C1.1, and after granting Honeycutt a two-level downward adjustment for acceptance of responsibility, pursuant to U.S.S.G. 3E1.1(a), the court determined that Honeycutt had a total offense level of 34.  Moreover, although the court determined that a downward departure was not justified by either duress or drug addiction, it found that Honeycutt's criminal history category of IV was over-stated and departed downward to criminal history category III, resulting in an advisory guideline range of 188 to 235 months' imprisonment.  The court ultimately sentenced Honeycutt at the bottom of her advisory guideline range to 188 months' imprisonment, 5 years' supervised release, and a $100 special assessment fee.

Honeycutt argues on appeal that the district court plainly erred in determining drug amount  for the purpose of calculating her offense level by relying on the government's factual proffer during the plea colloquy.  Honeycutt concedes that, although she objected to this drug amount, she did not object to the evidence on which the court relied in making this finding.  Nevertheless, citing to the Supreme Court's holding in Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), and this Court's decision in United States v. Chau,

5

426 F.3d 1318 (11th Cir. 2005), she contends that the court's reliance on this proffered evidence in determining drug amount resulted in plain error because it allowed the government to prove contested matters solely based on its own allegations.

Prior to Honeycutt's sentencing hearing, the Supreme Court issued its decision in Booker, holding that the mandatory nature of the federal guidelines rendered them incompatible with the Sixth Amendment's guarantee to the right to a jury trial. United States v. Booker, 543 U.S. 220, 232-35, 125 S.Ct. 738, 749-51, 160 L.Ed.2d 621 (2005).[2] In a second and separate majority opinion, the Booker Court explained that, to best preserve Congress's intent in enacting the Sentencing Reform Act of 1984, the appropriate remedy was to "excise" two specific sections—18 U.S.C. § 3553(b)(1) (requiring a sentence within the guideline range, absent a departure) and 18 U.S.C. § 3742(e) (establishing standards of review on appeal, including de novo review of departures from the applicable guideline range)—thereby effectively rendering the Sentencing Guidelines advisory only. Id. at 258, 125 S.Ct. at 764. Thus, the Booker Court concluded that a defendant's

---

[2] The Supreme Court in Booker explicitly reaffirmed its rationale in Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." See Booker, 543 U.S. at 244, 125 S.Ct. at 756.

6

guideline range is now advisory; it no longer dictates the final sentencing result but, instead, is an important sentencing factor that the sentencing court is to consider, along with the factors contained in 18 U.S.C. § 3553(a). Id. at 259-60, 125 S.Ct. at 764-65.

Post-Booker, we review a defendant's sentence for reasonableness. See Booker, 543 U.S. at 261, 125 S.Ct. at 765-66. Nevertheless, "the district court remains obliged to 'consult' and 'take into account' the [g]uidelines in sentencing[.]" United States v. Crawford, 407 F.3d 1174, 1178 (11th Cir. 2005). "This consultation requirement, at a minimum, obliges the district court to calculate correctly the sentencing range prescribed by the [g]uidelines[.]" Id. (emphasis in original). In determining whether the district court properly calculated Honeycutt's guideline range, we continue to review the district court's factual determinations for clear error. See id. at 1178-79 (explaining that Booker did not alter either our review of the application of the guidelines, or our standards of review). We cannot find clear error unless we are "left with a definite and firm conviction that a mistake has been committed." Id. at 1177 (quotation omitted).

Honeycutt, however, concedes that, although she objected at sentencing to the court's calculation of drug amount, she did not object to the court's reliance on the government's factual proffer in determining this amount. When the appealing

7

party does not clearly state the grounds for an objection in the district court, we are limited to reviewing for plain error. United States v. Massey, No. 05-11514, slip op. at 1745 (11th Cir. March 23, 2006). "An appellate court may not correct an error the defendant failed to raise in the district court unless there is: (1) error; (2) that is plain, and (3) that affects substantial rights . . . [and then] only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id. (quotation omitted).

The Drug Quantity Table in § 2D1.1(c) of the United States Sentencing Guidelines assigns the offense level for convictions involving a controlled substance according to the substances' weight. See generally U.S.S.G. § 2D1.1(a)(3) & (c). The government bears the burden of establishing a disputed fact, such as this drug amount, by a preponderance of the evidence. See United States v. Rodriguez, 398 F.3d 1291, 1296 (11th Cir.), cert. denied, 125 S.Ct. 2935 (2005). However, to the extent Honeycutt is contending that the government failed to satisfy this burden because it relied on its own factual proffer, and she has cited to our decision in Chau and the Supreme Court's holding in Crawford, this reliance is misplaced.

The Sixth Amendment's Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with

8

the witnesses against him . . .." U.S. Const. Amend. VI. In <u>Crawford</u>, the Supreme Court held that, when testimonial evidence is used against a defendant, the defendant's Sixth Amendment rights under the Confrontation Clause cannot be denied unless the witness was unavailable at trial and the defendant had a prior opportunity to cross-examine him. See <u>Crawford</u>, 541 U.S. at 68, 124 S.Ct. at 1374. Because the government was relying on Honeycutt's own admission, instead of hearsay evidence, <u>Crawford</u> is inapplicable in the instant case. To the extent Honeycutt also is relying on <u>Chau</u>, we concluded in <u>Chau</u> that the admission of hearsay evidence at a sentencing hearing "cannot be plain error." See <u>Chau</u>, 426 F.3d at 1323. Furthermore, subsequent to deciding <u>Chau</u>, we concluded that the right to confrontation does not apply at sentencing in non-capital cases. See <u>United States v. Cantellano</u>, 430 F.3d 1142, 1146 (11th Cir. 2005), <u>cert. denied</u>, 126 S.Ct. 1604 (2006).

Accordingly, we conclude that the district court did not plainly err at sentencing with regard to Honeycutt's rights under the Confrontation Clause. The court based its calculations upon Honeycutt's admission. We, therefore, affirm her sentence.

**AFFIRMED.**