[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-11185
Non-Argument Calendar
_____

D.C. Docket No. 1:14-cr-20345-FAM-1


UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

WILLIAM DIAZ,

Defendant - Appellant.

_____

Appeals from the United States District Court
for the Southern District of Florida
_____

(September 12, 2016)

Before TJOFLAT, JORDAN and JULIE CARNES, Circuit Judges.

PER CURIAM:

William Diaz appeals the 87-month prison sentence he received on March 4,

2015, on a plea of guilty to conspiracy to commit bank fraud and wire fraud, in

violation of 18 U.S.C. § 1349.  Diaz participated in a fraudulent real estate transaction scheme in which he played a role, to varying degrees, in defrauding mortgage companies in order to obtain loans for eight residential properties in South Florida.  We find no merit in Diaz's appeal and accordingly affirm the District Court's judgment.

Diaz's brief raises four issues.  The first is whether the District Judge who presided over the case erred in failing to disclose to the parties prior to sentencing that an individual unknown to the Judge came up to him at an event at the Miami Beach Convention Center on December 7, 2014, three months prior to Diaz's sentencing, and said that "he had a friend that had a case [unidentified] in front of me."  Unbeknownst to the Judge, the individual was an employee of Diaz.  Post sentencing, Diaz revealed the Convention Center contact in two motions:  a motion to vacate sentence pursuant to Federal Rule of Criminal Procedure 35 and a motion to recuse.  The Court recused, and in accordance with the Local Rules of the Southern District of Florida, the Clerk assigned the Rule 35 motion to a different district judge.

Diaz's Notice of Appeal appeals the Rule 35 disposition and his sentence. The Rule 35 motion remains undisposed of in the District Court, so it is not before us.[1]  What is before this Court is Diaz's appeal of his sentence.  We have

---

[1] It is problematic whether Rule 35 can provide the service Diaz is seeking.

jurisdiction to hear it pursuant to 18 U.S.C. § 3742(a).  Diaz's brief presents three issues concerning his sentence:  (1) whether the District Court erred under Federal Rule of Criminal Procedure 32 in failing to ensure prior to the imposition of sentence that he and his attorney had reviewed the presentence report ("PSI"); (2) whether the Court failed to comply with Rule 32 in failing to state on the record why it was denying his motion for a downward departure from the Guidelines sentence range; and (3) whether the Court erred in calculating the loss attributable to his conduct.

## I.

Federal Rule of Criminal Procedure 32 provides, in relevant part, that at sentencing, the district court "must—for any disputed portion of the [PSI] or other controverted matter—rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing."  Fed. R. Crim. P. 32(i)(3)(B).  Diaz did not

---

The authority of a district court to modify an imprisonment sentence is narrowly limited by statute.  Specifically, [18 U.S.C.] § 3582(c), provides that a court may not modify an imprisonment sentence expect in these three circumstances: (1) where the Bureau of Prisons has filed a motion and [certain other conditions are met]; (2) where another statute or [Rule] 35 expressly permits a sentence modification . . . or (3) where a defendant has been sentenced to a term of imprisonment based on a sentencing range that was subsequently lowered by the [Sentencing] Commission and certain other requirements are met. . . . absent other express statutory authority, modification of an imprisonment sentence can only be done pursuant to Rule 35.

_United States v. Phillips_, 597 F.3d 1190, 1194-95 (11th Cir. 2010) (citing 18 U.S.C. § 3582(c)).

object to the District Court's failure to comply with the rule following the imposition of sentence, when the Court elicited the parties' objections, so we review the issue for plain error. *United States v. Peters*, 403 F.3d 1263, 1270 (11th Cir. 2005). We may only correct an error not raised by the defendant to the district court if there is: (1) error, (2) that is plain, (3) that affects substantial rights, and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Id.* at 1271. Unless the language of a statute specifically resolves the issue, "there can be no plain error where there is no precedent from the Supreme Court or this Court directly resolving it." *United States v. Chau*, 426 F.3d 1318, 1322 (11th Cir. 2005) (quotation marks and citation omitted).

The record does not tell us in so many words that Diaz and his attorney discussed the PSI prior to sentencing. But they must have, because Diaz's attorney moved the District Court at sentencing for a downward departure from the Guidelines sentence range. To make the motion, counsel must have read the PSI and explained to Diaz why a downward departure was required to avoid a sentence within the Guidelines range. What counsel's, and Diaz's, behavior communicated to the Court was that they were well acquainted with the PSI. Because Diaz points us to no controlling authority that would have informed the District Court that Diaz and his lawyer had not discussed the PSI and that it should intervene, we find no plain error.

4

II.

Diaz claims that the District Court failed to comply with Rule 32 by not explicitly ruling on his motion for a downward departure which was based on the proposition that his criminal history category II overrepresented his criminal history.[2]  Because Diaz did not raise this argument to the District Court when the Court asked if Diaz had any objection to the imposed sentence, we review his claim for plain error.

While it is undisputed that the District Court did not expressly state that it had ruled on Diaz's motion for a downward departure, the record is clear that the Court did implicitly rule on that motion.  The PSI established an advisory guideline range of 87-108 months' imprisonment based on offense level 28 in criminal history category II.  The advisory range was 78-97 months with a criminal history category I.  The Court, in sentencing Diaz to 87 months, provided explicitly that while "there is an increase by criminal history category of [II] . . . I do note that the 87 months still falls within the guideline range for a criminal history category [I]."  Thus, the record supports unambiguously that the Court did in fact rule on the matter.  The Court did not err, much less commit plain error.

---

[2] The PSI stated that Diaz had two separate convictions for Driving Under the Influence and three separate boating violations, all of which established a criminal history category of II.

5

III.

Diaz argues that the District Court erred in its calculation of loss attributed to his conduct, thereby imposing a higher enhancement under the Sentencing Guidelines than his conduct merited.  In accordance with the recommendation of the PSI, the District Court imposed a 20-level enhancement for fraud based on the loss amount of $7,268,037.  Diaz argues that the Court erred in its loss calculation by incorrectly attributing to him loss from a fraudulent real estate transaction that Diaz claims was caused unilaterally by one of his co-conspirators.  Specifically, Diaz claims that although he participated in defrauding a mortgage lender in the transaction, he believed that the co-conspirator would use the proceeds of the fraudulently-obtained loan to pay back an earlier mortgage, thereby lessening the amount of loss.  Instead, the co-conspirator did not pay back the mortgage, and the Court attributed that loss to Diaz.  Diaz concludes that if the Court calculated loss without including that amount, it would have imposed an 18-level enhancement rather than a 20-level enhancement.[3]

We review a district court's loss calculation for clear error.  *United States v. Campbell*, 765 F.3d 1291, 1301-02 (11th Cir. 2014).  No clear error exists in which the record supports the district court's findings.  *United States v. Rodriguez*, 751

---

[3] The 2014 Sentencing Guidelines, applicable when Diaz was sentenced, provided for a 20-level enhancement for fraud offenses where the loss amount is more than $7,000,000 but less than $20,000,000.  U.S.S.G. § 2B.1.1(b)(1)(K)-(L) (2014).  It provides for an 18-level enhancement where the loss amount is more than $2,500,000 but less than $7,000,000.  *Id.* § 2B.1.1(b)(1)(J)-(K) (2014).

F.3d 1244, 1255 (11th Cir. 2014). In attributing to Diaz loss caused by the co-conspirator, the Court reasoned that even if Diaz did not "actually think the loss was going to be the sum that it was," the loss fell "within the gamut of intended loss." A court "may hold all participants in a conspiracy responsible for the losses resulting from the reasonably foreseeable acts of co-conspirators in furtherance of the conspiracy." *United States v. Dabbs*, 134 F.3d 1071, 1082 (11th Cir. 1998). Based on the undisputed facts in the record that Diaz was directly involved in the fraudulent transaction in question and that Diaz knew that the co-conspirator had never paid off any mortgages during the entire course of the conspiracy—a conspiracy involving seven other fraudulent transactions—it was not clear error for the District Court to conclude that Diaz could have reasonably foreseen the loss as a result of his fraudulent actions.[4]

AFFIRMED.

---

[4] Diaz contends also that the District Court erred in its loss calculation by relying on both the actual loss and the intended loss of his fraudulent conduct, and by relying on the unilateral loss figures provided by the victim banks, thereby not requiring the government to meet its burden of proving loss. The Guidelines define "loss" as the greater of the actual loss or intended loss. U.S.S.G. § 2B1.1 cmt. n.3(A). The record reveals that the District Court relied solely on the actual loss to the victim banks as a result of Diaz's fraudulent conduct. Further, other than his co-conspirator's loss attributed to Diaz that he challenged above, Diaz did not object to the loss figures reported in the PSI. While the government has the burden of establishing disputed fact by a preponderance of the evidence, Diaz did not dispute the loss figures. Accordingly, the District Court did not clearly err in relying on those figures. *See United States v. Polar*, 369 F.3d 1248, 1255 (11th Cir. 2004) ("The district court's factual findings for purposes of sentencing may be based on . . . undisputed statements in the PSI.").