[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 23-11268

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

JACOB DOMINIC VANDYKE,
a.k.a. Quicksmoke024,
a.k.a. Trey Penny,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Southern District of Florida

2                    Opinion of the Court                    23-11268

D.C. Docket No. 9:22-cr-80127-DMM-2

_____

_____

No. 23-11794

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

JACOB DOMINIC VANDYKE,
a.k.a. Quicksmoke024,
a.k.a. Trey Penny,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Southern District of Florida
D.C. Docket No. 9:22-cr-80127-DMM-2

_____

Before WILLIAM PRYOR, Chief Judge, and NEWSOM and ANDERSON, Circuit Judges.

PER CURIAM:

Jacob Vandyke appeals his sentence of 160 months of imprisonment and a term of 15 years of supervised release imposed after he pleaded guilty to conspiring to distribute and to distributing child pornography. 18 U.S.C. § 2252A(a)(2), (b)(1). Vandyke argues that the district court erred by relying on commentary to the Sentencing Guidelines to calculate the number of images attributable to him and failed to adhere to *Kisor v. Wilkie*, 139 S. Ct. 2400 (2019), and *United States v. Dupree*, 57 F.4th 1269 (11th Cir. 2023) (en banc). United States Sentencing Guidelines Manual § 2G2.2(b)(7), cmt. n.6(B)(ii) (Nov. 2021). He also argues that his sentence is unreasonable. We affirm.

## I. BACKGROUND

Vandyke agreed to plead guilty to one count of conspiring to distribute and four counts of distributing child pornography. 18 U.S.C. § 2252A(a)(2), (b)(1). In his factual proffer, Vandyke admitted that between September 21 and October 10, 2021, an undercover Homeland Security Investigations task force officer entered and monitored a chatroom in which users shared photographs and videos of and facilitated access to child pornography. The chatroom administrator invited new users and posted the chatroom rules each time a new user entered. The rules stated that the chatroom "is extreme and 13 down," referring to the age of the children being sexually abused, and required each user to post at least

three videos containing child pornography or they would be removed for inactivity. Users posted images and videos depicting the sexual abuse of young children on a daily basis.

Vandyke admitted that on September 26, 2021, he entered the chatroom as "Quicksmoke024" using the name "Trey Penny." "Quicksmoke024" immediately posted three videos in the chatroom. Over the next 11 days, "Quicksmoke024" posted several videos and photographs depicting the sexual abuse of children as young as three years old. After law enforcement determined that "Quicksmoke024" used an e-mail address and internet protocol addresses assigned to Vandyke in Michigan, Vandyke was arrested at his residence in Florida. Vandyke admitted in a recorded post-arrest interview that he posted the videos and photographs in the chatroom under the username "Quicksmoke024." An examination of his phone revealed 12 videos depicting the sexual abuse of real children between approximately four years old to young teens. His phone also contained four computer-generated videos and over 450 images of cartoon child sexual abuse material, including bondage, bestiality, and incest of children ranging from infants to young teens.

Vandyke's presentence investigation report provided a base offense level of 22, U.S.S.G. § 2G2.2(a)(2), added two levels because the material involved prepubescent minors, id. § 2G2.2(b)(2), added five levels because the material was distributed in exchange for valuable consideration, id. § 2G2.2(b)(3)(B), added four levels because the material portrayed violent conduct or sexual abuse of

an infant, *id.* § 2G2.2(b)(4), added two levels for using a computer to distribute the material, *id.* § 2G2.2(b)(6), added five levels because the offense involved 600 or more images, *id.* § 2G2.2(b)(7), and subtracted three levels for acceptance of responsibility, *id.* § 3E1.1. With a total offense level of 37 and a criminal history category of I, Vandyke's advisory guideline range was 210 to 262 months of imprisonment.

Vandyke objected to the number of images. He argued that because "image" in section 2G2.2 unambiguously meant that one video equaled one image, the district court could not defer to the commentary that instructs that one video equals 75 images, *id.* § 2G2.2, cmt. n.6(B)(ii). The government responded that the district court owed deference to the ratio because "image" was genuinely ambiguous when determining how many images were contained within a video, and the ratio was not arbitrary but reflected the fair and considered judgment of the Sentencing Commission.

At sentencing, the district court overruled Vandyke's objection and adopted the presentence report. The district court ruled that the 75:1 ratio was not arbitrary and that the Sentencing Commission adequately explained its reasoning and acted within its capacity. Vandyke requested a sentence of 120 months based on the statutory sentencing factors, 18 U.S.C. § 3553(a), and argued that his personal characteristics favored a lower sentence, including his age of 25 years, having repaired several familial relationships, having an infant daughter to raise with his ex-fiancée, and having a codefendant, Johnathan Fleak, who was sentenced to 180 months

for more extensive criminal conduct. Vandyke allocuted and expressed remorse for his conduct.

The district court sentenced Vandyke to 160 months of imprisonment followed by 15 years of supervised release. The district court stated that it had considered the statutory sentencing factors, the most important of which were the seriousness of the crime and the need to provide adequate deterrence for a harmful crime. The district court also stated that it considered Vandyke's personal characteristics and psychological report and the disparity between his and Fleak's conduct. Vandyke objected to the procedural and substantive reasonableness of his sentence.

## II. STANDARDS OF REVIEW

We review the interpretation and application of the Sentencing Guidelines *de novo*. *Dupree*, 57 F.4th at 1272. We review the reasonableness of a sentence and weighing of the sentencing factors, 18 U.S.C. § 3553(a), for abuse of discretion. *Gall v. United States*, 552 U.S. 38, 51 (2007). The district court must "commit[] no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence . . . ." *Id.* We will disturb "the sentence if, but only if, we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *United*

*States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010) (en banc) (internal quotation marks omitted).

## III. DISCUSSION

Vandyke challenges his sentence on two grounds. First, he argues that the term "images" in the guideline, U.S.S.G. § 2G2.2(b)(7), unambiguously means that one video equals one image, so the district court erred by relying on the 75:1 ratio in the commentary, *id.* § 2G2.2(b)(7), cmt. n.6(B)(ii), to hold him responsible for over 600 images instead of 71 images, based on the 63 videos and eight still images that were distributed during his participation in the chatroom. Second, Vandyke argues that his sentence is substantively unreasonable. We address both arguments in turn.

*A. The District Court Did Not Err by Relying on Commentary to Hold Vandyke Responsible for Over 600 Images of Child Pornography.*

In 2003, Congress amended the guidelines to include an image table that applies to child pornography offenses, *id.* § 2G2.2(b)(7). Prosecutorial Remedies and Tools Against the Exploitation of Children Today (PROTECT) Act of 2003, Pub. L. No. 108-21, 117 Stat. 650. The image table provides a two-level enhancement for 10 to 149 images; a three-level enhancement for 150 to 299 images; a four-level enhancement for 300 to 599 images; and a five-level enhancement for 600 or more images. U.S.S.G. § 2G2.2(b)(7). Congress did not define "images" or instruct how media formats other than still photographs should be tallied under the table.

As a result, the Sentencing Commission sought public comment and conducted studies regarding these and other changes to the guidelines. After receiving a range of suggestions—such as that one video should equal one image and that each moving image should result in an enhancement of two or three levels—the Commission "determined that because each video contained multiple images it should be counted as more than one image." United States Sentencing Commission, *History of the Child Pornography Guidelines*, Oct. 2009, at 41–44, https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-projects-and-surveys/sex-offenses/20091030_History_Child_Pornography_Guidelines.pdf [https://perma.cc/23F6-4585]. Because of the disproportionate results that would occur by counting each video as a single image or by counting each frame of a video as a single image, the Commission selected a ratio of 75 images to one video to respect the penalty scale that Congress established. *See id*. The adopted commentary instructs that each "photograph, picture, computer or computer-generated image, or any similar visual depiction" shall count as one image, and each "video, video-clip, movie, or similar visual depiction shall be considered to have 75 images" unless the recording is "substantially more than 5 minutes," which may warrant an upward departure. U.S.S.G. § 2G2.2(b)(7), cmt. n.6.

In *Kisor*, the Supreme Court held that a district court should defer to an agency's interpretation of a regulation "only if a regulation is genuinely ambiguous. . . . even after a court has resorted to all the standard tools of interpretation." 139 S. Ct. at 2414. We held

in *Dupree* that *Kisor*'s clarification applies to the Sentencing Guidelines and that the commentary cannot deviate from an unambiguous guideline. 57 F.4th at 1275, 1277.

The district court did not err by relying on this commentary because the term "images" in the guideline is genuinely ambiguous. *See Kisor*, 139 S. Ct. at 2414. The guideline does not define "images," nor does it resolve how a video containing a sequence of images should be tallied under the image table. *See United States v. Phillips*, 54 F.4th 374, 383–84 (6th Cir. 2022). Nevertheless, Vandyke argues that videos and photographs must be treated equally under the guidelines because they are treated equally in the statutory definitions of "visual depiction" and "child pornography." *See* 18 U.S.C. § 2256(5) (defining "visual depiction" as "includ[ing] undeveloped film and videotape, data stored on computer disk or by electronic means which is capable of conversion into a visual image . . . ."); *id.* § 2256(8) (defining "child pornography" as "any visual depiction, including any photograph, film, video, [or] picture . . . ."). But merely listing the types of qualifying visual depictions provides no guidance about what Congress meant when it said "images," much less how it intended district courts to quantify videos containing child pornography for sentencing purposes.

Vandyke insists that the guideline unambiguously means that one video equals one image because the guideline does not distinguish between "whether the visual image was still or moving." This argument is contradicted by common sense and plain meaning. By definition, a moving image or video contains more

than one image. *See Video*, Oxford English Dictionary (2022) ("video" means "a recording of moving visual *images* . . . in a digital format"); *Video,* American Heritage at 1930 (5th ed. 2016) ("video" means "[a] sequence of *images* processed electronically into an analog or digital format and displayed on a screen with sufficient rapidity as to create the illusion of motion and continuity"). Because a video comprising multiple images plainly is not a single image, Vandyke fails to establish that the guideline is unambiguous.

Vandyke alternatively argues that even if the guideline is ambiguous, the commentary is not entitled to deference. *See Kisor*, 139 S. Ct. at 241–17. We need not address this argument. Vandyke's only proposed interpretation—that we count each video as one image—is plainly unreasonable. And Vandyke fails to explain how any other method of counting all the images contained within the 63 videos he is responsible for would not result in the application of the same five-level enhancement for the involvement of at least 600 images. *See* Fed. R. Crim. P. 52(a); *United States v. Olano*, 507 U.S. 725, 735 (1993) (explaining that for an error to have been prejudicial, "[i]t must have affected the outcome of the district court proceedings.").

### B. Vandyke's Sentence is Substantively Reasonable.

The district court did not abuse its discretion by sentencing Vandyke to 160 months of imprisonment. The district court reasonably determined that the sentence was necessary to punish Vandyke for his participation in a "13 down" chatroom and for his distribution of images that "were worse than the average" and

"unusually graphic," as well as to afford deterrence. *See* 18 U.S.C. § 3553(a). Although the district court declined to impose Vandyke's requested sentence of 120 months, the district court still varied below the guideline sentencing range of 210 to 260 months of imprisonment by 50 months after considering his personal characteristics, low-risk psychological assessment, and the disparity that would result if he received a longer sentence than Fleak, who was sentenced to 180 months for more extensive criminal conduct. *See id.* Because the district court did not fail to consider relevant factors that were due significant weight, give significant weight to an improper or irrelevant factor, or make a clear error of judgment, Vandyke failed to establish that his sentence is substantively unreasonable. *See Irey*, 612 F.3d at 1189. Insofar as Vandyke argues that his sentence violates the Sixth Amendment because the district court enhanced his sentence based on factual findings not made by a jury, he correctly acknowledges that his argument is foreclosed by our precedent. *See United States v. Chau*, 426 F.3d 1318, 1323–24 (11th Cir. 2005).

## IV. CONCLUSION

We **AFFIRM** Vandyke's convictions and sentence.