**NOT FOR PUBLICATION**

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 25-11661
Non-Argument Calendar
_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

LARRY DEWAYNE NEEL,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 5:24-cr-00028-TKW-MJF-1
_____

Before JILL PRYOR, BRANCH, and GRANT, Circuit Judges.

PER CURIAM:

Larry Neel challenges his conviction by raising various constitutional claims for the first time on appeal. Because we see no plain error, we affirm.

## I.

In December 2023, police went to Larry Neel's home to execute a felony arrest warrant issued earlier that day. When Neel opened the door, Investigator David Howell and Lieutenant Dylan Jackson noticed two pump action shotguns propped up against a wall. After they arrested Neel, the officers performed a protective sweep and secured the loaded shotguns. They obtained a search warrant a few hours later. Inside Neel's home, the officers found three more firearms and multiple boxes of ammunition.

Neel was previously convicted of manufacturing, possessing, and trafficking methamphetamine and other controlled substances, along with a host of other felonies. A grand jury charged him with one count under 18 U.S.C. § 922(g)(1), which bars the possession of firearms by convicted felons. Neel filed a motion to suppress, arguing that the officers' protective sweep violated the Fourth Amendment.

The district court held a suppression hearing in December 2024—a year after the search took place. On the stand, Investigator Howell was asked multiple times by both sides—on direct, cross, redirect, and recross—about the shotguns he found inside Neel's home. For Howell, it was apparent that Neel, a convicted felon, could not legally possess those firearms. So he applied for a search warrant based on what he observed in plain view. Near the end of Howell's testimony, the district court asked him to clarify whether it was "fair" to "assume that even without knowing what brands they were, after seeing what you thought were pump-action

shotguns, knowing that . . . Mr. Neel is a convicted felon, you were going to get a search warrant at that point?"  Howell answered, "Yes, sir."  Neither side objected to the district court's inquiry.

Howell also testified that he and Lieutenant Jackson executed the arrest warrant "early in the morning"—"probably" between 5:30 and 7:00 am.  But when asked about the precise time of the arrest, Jackson explained that "I don't recall.  I know it would have been early."  Later in the hearing, Neel's attorney raised an issue that "wasn't mentioned in the motion to suppress" but "sort of came up as we were talking"—the arrest warrant was signed at 8:24 am, after the 5:30 to 7:00 am timeframe that Howell described.  The district court asked Neel's attorney to explain how this issue relates to the motion to suppress.  Her answer: "I'm not sure that it does."  After adding that "it maybe goes towards their credibility a little bit," she said she did not "know if there's law on that issue or not."  The court then called Jackson back to the stand.  In a short colloquy with the court, Jackson testified that he and Howell had not arrived by 7:00 am, but came "later in the morning" with an arrest warrant in hand.  Neel declined to ask any follow-up questions.

The district court denied Neel's motion to suppress.  In its view, even though the officers' protective sweep violated the Fourth Amendment, suppression was not warranted because the lawful search that took place a few hours later would have revealed the same underlying evidence.  Neel pleaded guilty a month later and was eventually sentenced to 108 months' imprisonment.

In this appeal, Neel argues—for the first time—that (1) the district court violated due process by questioning Howell about the search warrant application and Jackson about the timing of the arrest, and (2) as applied to him, § 922(g)(1) is inconsistent with the Second Amendment.

## II.

While constitutional issues are ordinarily reviewed de novo, unpreserved issues are reviewed for plain error. *See United States v. Nash*, 438 F.3d 1302, 1304 (11th Cir. 2006).

## III.

Generally, "there can be no plain error where there is no precedent from the Supreme Court or this Court directly resolving it." *United States v. Chau*, 426 F.3d 1318, 1322 (11th Cir. 2005) (quotation omitted). Here, we do have precedents that address Neel's claims—just not in ways that support his position.

*First*, we see no plain error in the district court's questioning at the suppression hearing. Neel has not pointed to any binding precedent directly holding that a district court violates due process by asking a single leading question or by probing witnesses about events that are critical to the resolution of a potentially dispositive factual issue. To the contrary, our precedents hold that the trial judge may "question witnesses and elicit facts not yet adduced or clarify those previously presented." *United States v. Caldwell*, 81 F.4th 1160, 1179 (11th Cir. 2023) (quotation omitted).

That is what the district court did here. Before Howell stepped down from the stand, the court asked him about one of the central issues in dispute: whether his plain view observations prompted him to apply for a search warrant. Because Neel's attorney did not inquire into that issue on recross, the court "pick[ed] up on where she left off" with a question formulated to "clarify the evidence presented." *SEC v. Levin*, 849 F.3d 995, 1007 (11th Cir. 2017) (quotation omitted). In exercising its "discretion to question witnesses," the court did not take on "the role of an advocate." *Id.*

The court also asked Neel's attorney whether her Fourth Amendment argument depended on the timing of the arrest in relation to the issuance of the arrest warrant. The attorney replied, "I don't know the answer to that," disclaiming any knowledge as to whether "there's case law on that issue because I didn't expect it to come up." After bringing Jackson back into the courtroom, the court told him that "[w]e just were talking through an issue that was a little bit confusing to us and thought maybe you could shed a little bit of light on it." Neel did not object to the court's questions or try to impeach Jackson's answer through cross examination. And Neel does not contend that the court clearly erred in crediting Jackson's testimony. On this record, we cannot say that the court failed to "maintain neutrality" by asking a few questions to clarify a factual issue raised by Neel's belated argument. *Caldwell*, 81 F.4th at 1179.

*Second*, this Court's precedents squarely foreclose Neel's as-applied Second Amendment challenge to § 922(g)(1).  We recently rejected a nearly identical challenge brought by a defendant who, like Neel, was previously convicted of possession of a controlled substance under state law.  *See United States v. Dubois*, 139 F.4th 887, 889, 894 (11th Cir. 2025).  We are bound by that prior panel precedent.

★     ★     ★

We **AFFIRM**.