[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
May 15, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-11312
Non-Argument Calendar

_____

D. C. Docket No. 06-60062-CR-WPD

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ELLIS JEROME PARKER, SR.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(May 15, 2008)**

Before CARNES, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

This is Ellis Jerome Parker, Sr.'s appeal of his convictions for conspiring to

procure, prepare, and file false income tax returns in violation of 18 U.S.C. § 371 and assisting in procuring, preparing, and filing false income tax returns in violation of 26 U.S.C. § 7206(2). Parker also appeals his sixty-month prison sentence. At trial, Parker represented himself, but he is represented by counsel in this appeal.

## I.

Parker first contends that he did not knowingly, voluntarily, and intelligently waive his right to counsel. Parker emphasizes that he had no working knowledge of the rules of procedure or evidence and that the case was complicated.

Whether a defendant "validly waived his right to counsel . . . is a mixed question of law and fact, which we review de novo. On direct appeal, the government bears the burden of proving the validity of the waiver." United States v. Evans, 478 F.3d 1332, 1340 (11th Cir.) (internal quotation marks and citation omitted), cert. denied, 128 S. Ct. 257 (2007).

"A criminal defendant has a constitutional right to represent himself when he knowingly, voluntarily, and intelligently elects to do so. For a waiver of the Sixth Amendment right to be valid, the defendant must clearly and unequivocally assert [his] right of self-representation. Before the court grants the defendant's request, the court must make the defendant aware of the dangers and disadvantages of

self-representation, so that the record will establish that he knows what he is doing and his decision is made with his eyes open." Id. (internal quotation marks and citation omitted; alteration in original). "The purpose of a Faretta [v. California, 422 U.S. 806, 95 S. Ct. 2525 (1975)] inquiry is not to determine the extent of a defendant's legal knowledge or to determine how good of a trial advocate a defendant will be." United States v. Kimball, 291 F.3d 726, 731 (11th Cir. 2002). The district court is not required to ask or determine whether the defendant understands any particular rules of evidence or procedure; we need "only to determine whether [the defendant] understood that rules do exist to govern the procedure of a trial, the introduction of evidence and the behavior of advocates and to determine whether [the defendant] understood that he would be bound by those rules." Id.

After Parker unequivocally expressed his desire to represent himself, the district court gave him the required Faretta warnings and held an evidentiary hearing on his request to represent himself. At that hearing Parker testified that he had studied the law at the city law library and had extensively reviewed the facts of his case and the legal issues involved. He also testified that he held a doctoral degree, was in good mental health, and did not take any medication. The record reflects that Parker was aware that rules existed governing the course of the trial

3

and the admission of evidence, and that he knew he would be bound by these rules. The district court also appointed stand-by counsel to help Parker if the need arose at trial and he requested assistance. The district court found that Parker knowingly, voluntarily, and intelligently waived his right to counsel. We agree. The fact that Parker did not actually know the rules of procedure or evidence does not make his waiver any less knowing, voluntary, or intelligent under Faretta. See id.

## II.

Parker next contends that the district court abused its discretion by instructing the jury at the start of trial that it would not allow the trial transcript to be read back to the jury. Parker argues that the district court erred by unilaterally giving this instruction without consulting with him and offering him a chance to object to it.

A district court has broad discretion to decide what access, if any, a jury will have to trial transcripts. See United States v. Delgado, 56 F.3d 1357, 1370 (11th Cir. 1995); United States v. Loyd, 743 F.2d 1555, 1567 (11th Cir. 1984). The district court did not abuse its discretion by informing the jury that trial transcripts would not be read back to it. The jury never indicated that it was interested in having that done, and in any event, Parker does not argue that he was prejudiced by the district court's instruction. See Fed. R. Crim. P. 52(a).

4

**III.**

Parker also contends that the district court abused its discretion and violated his rights under the Sixth Amendment's Confrontation Clause by not permitting him to conduct recross-examination of one witness and by limiting his cross-examination of another. Parker argues that the government elicited new information from Esai Ambo on redirect pertaining to whether Parker had personally falsified tax returns. He also argues that the district court should have permitted him to further cross-examine Sharon Pierce regarding the nature of their alleged conspiratorial agreement.

We review the district court's evidentiary rulings only for an abuse of discretion. United States v. Taylor, 17 F.3d 333, 340 (11th Cir. 1994). The district court must, however, exercise its discretion within the boundaries of the Sixth Amendment. Id. "[O]nce there is sufficient cross-examination to satisfy the Sixth Amendment's Confrontation Clause, further questioning is within the district court's discretion." Id. Where, as is the case here, no objection is made at the trial, we review the district court's rulings only for plain error. United States v. Arbolaez, 450 F.3d 1283, 1291 (11th Cir. 2006); see also United States v. Edouard, 485 F.3d 1324, 1343 (11th Cir.), reh'g and reh'g en banc denied, 254 Fed. Appx. 803 (11th Cir. 2007). We may correct plain error if there is (1) error, (2) that is

plain, and (3) that affects substantial rights, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. Arbolaez, 450 F.3d at 1291.

The Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. Amend. VI. It guarantees criminal defendants an opportunity to impeach, through cross-examination, the testimony of witnesses for the prosecution. United States v. Baptista-Rodriguez, 17 F.3d 1354, 1366 (11th Cir. 1994). "The importance of full cross-examination . . . increases where . . . the witness is the star government witness or participated in the crimes for which the defendant is being prosecuted." Taylor, 17 F.3d at 340. "As opposed to cross-examination, a defendant has no constitutional right to recross-examination. A defendant nonetheless does have a limited right to recross-examination where a new matter is brought out on redirect examination." United States v. Ross, 33 F.3d 1507, 1518 (11th Cir. 1994) (citation omitted). For that reason, allowing redirect examination on new material but denying cross-examination on the same material may violate the Confrontation Clause. Id.

The district court did not plainly err in limiting Parker's examinations of Ambo and Pierce. The "new" information Parker identifies in Ambo's testimony

on redirect examination had actually already been elicited during his original direct examination. As a result, Parker had no right to recross-examine Ambo. See id. Additionally, the district court was not required to permit Parker to ask Pierce the same question again where she had already provided a full and clear answer.

**IV.**

Next, Parker contends that the district court should have granted his motion for a judgment of acquittal because there was no evidence showing a "specific 'agreement'" between Parker and others to prepare fraudulent tax returns. Parker argues that he did not personally prepare the twelve tax returns at issue at trial, that he did not receive any personal financial benefit from the tax refunds, and that the government's case was based primarily on the testimony of cooperating co-defendants.

We review de novo sufficiency of the evidence claims. United States v. Anderson, 289 F.3d 1321, 1325 (11th Cir. 2002). This "standard of review is stacked in the government's favor." United States v. Moore, 504 F.3d 1345, 1348 (11th Cir. 2007); see also United States v. Robertson, 493 F.3d 1322, 1329 (11th Cir. 2007) ("We view the evidence in the light most favorable to the government and resolve all reasonable inferences and credibility evaluations in favor of the jury's verdict. The evidence need not exclude every reasonable hypothesis of

innocence or be wholly inconsistent with every conclusion except that of guilt, provided that a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt." (internal citations and quotation marks omitted)).

"In order to sustain a conviction under 18 U.S.C. § 371, the government must show (1) the existence of an agreement to achieve an unlawful objective; (2) the defendant's knowing and voluntary participation in the conspiracy; and (3) the commission of an overt act in furtherance of the conspiracy." United States v. Brenson, 104 F.3d 1267, 1281–82 (11th Cir. 1997). A defendant is guilty of violating 26 U.S.C. § 7206(2) where he (1) willfully and knowingly aided or assisted (2) in the preparation or filing of a federal income tax return (3) that contained material statements that the defendant knew to be false. 26 U.S.C. § 7206(2); see also United States v. Searan, 259 F.3d 434, 441 (6th Cir. 2001).

"The existence of a conspiratorial agreement may be established through either direct or circumstantial evidence, such as inferences from the conduct of the alleged participants. In fact there is rarely any direct evidence of any agreement to join a conspiracy, and thus, the defendant's assent can be inferred from acts that furthered the conspiracy's purpose." Brenson, 104 F.3d at 1282 (internal quotation marks and citations omitted).

Whether cooperating government witnesses who testify against a defendant

8

are telling the truth is a decision for the jury that, once made, we will not disturb.

United States v. Calderon, 127 F.3d 1314, 1325 (11th Cir. 1997); see also Price v. Time, Inc., 416 F.3d 1327, 1345 (11th Cir. 2005) ("Legions of criminal defendants have been found guilty beyond a reasonable doubt on the testimony of witnesses who had everything to gain from implicating the defendants in crimes."); United States v. Lowery, 166 F.3d 1119, 1123–24 (11th Cir. 1999) (noting that the testimony of co-conspirators in return for sentencing considerations is a common place feature of criminal trials that "happens every work day in federal trial courts around this country"); United States v. Hewitt, 663 F.2d 1381, 1385 (11th Cir. 1981) (noting that acquittal is not required where "the government's case includes testimony by 'an array of scoundrels, liars and brigands'").

The evidence was more than sufficient to sustain Parker's convictions. Several former clients of Parker's tax preparation service testified that their returns were prepared based on false and inflated expense information that they did not provide to Parker and his tax preparers. Ambo, Nanita Edwards, and Pierce all testified that they: (1) followed Parker's instructions to falsify clients' expenses in preparing clients' tax returns; (2) used expense lists created by Parker for the same purpose; (3) observed Parker personally fabricate expense lists; and (4) heard Parker say that the purpose of this activity was to get as much money for their

9

clients as possible. This evidence was sufficient to allow the jury to infer that Parker came to an agreement to aid in the preparation and filing of fraudulent tax returns. See Robertson, 493 F.3d at 1329.

## V.

Parker's next contention is that his trial was fundamentally unfair because the district court permitted testimony about his twenty year long extra-marital affair with Edwards. Parker argues that this line of questioning was irrelevant and, even if relevant, was so unfairly prejudicial that it should not have been allowed. The district court permitted the testimony to demonstrate Edwards' familiarity with Parker's handwriting and to rebut the testimony of one of Parker's character witnesses.

We will not reverse a defendant's conviction and order a new trial on the basis of an evidentiary error unless that error affected the defendant's substantial rights, which means that the error must have affected the outcome of the proceedings. See United States v. De La Garza, 516 F.3d 1266, 1269 (11th Cir. 2008); see also Fed. R. Evid. 103(a).

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. "Although

10

relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 403.

Even if we were to conclude that the district court erred in allowing testimony concerning Parker's affair with Edwards, he would not be entitled to a new trial because he has not shown that his substantial rights were affected. There was overwhelming evidence that Parker conspired with others to prepare and file false tax returns. In addition to Edwards' identification, Ambo and Pierce also identified Parker's handwriting and there was a lot of other testimony, which we have already recounted, to support his conviction.

**VI.**

Parker also contends that he is entitled to a new trial on the ground that the government's lawyer committed several acts of prosecutorial misconduct. Generally, we review de novo claims of prosecutorial misconduct, which are a mixed questions of law and fact. United States v. Eckhardt, 466 F.3d 938, 947 (11th Cir. 2006), cert. denied, 127 S. Ct. 1305 (2007). However, absent a contemporaneous objection, we review allegations of prosecutorial misconduct only for plain error. United States v. Newton, 44 F.3d 913, 920 (11th Cir. 1995). "In the absence of any controlling precedent, there is no plain error in [a] case." United States v. Lejarde-Rada, 319 F.3d 1288, 1291 (11th Cir. 2003). "To find

11

prosecutorial misconduct, a two-pronged test must be met: (1) the remarks must be improper, and (2) the remarks must prejudicially affect the substantial rights of the defendant." United States v. Eyster, 948 F.2d 1196, 1206 (11th Cir. 1991). To meet the substantial prejudice prong, the improper comments must have "so infect[ed] the trial with unfairness as make the resulting conviction a denial of due process." Id. (internal quotation marks omitted). "In order to assess the prejudicial impact of a prosecutor's statements, we must evaluate them in the context of the trial as a whole and assess their probable impact on the jury." United States v. Hernandez, 145 F.3d 1433, 1438 (11th Cir. 1998). "Because statements and arguments of counsel are not evidence, improper statements can be rectified by the district court's instruction to the jury that only the evidence in the case be considered." United States v. Smith, 918 F.2d 1551, 1562 (11th Cir. 1990).

### A.

Parker first argues that the government's attorney engaged in prosecutorial misconduct during its closing argument when the attorney stated that: (1) there was nothing to rebut in Parker's closing argument; (2) the government's evidence hadn't been rebutted; (3) Parker, who had not testified at trial, had lied; (4) the jury should consider Ambo's testimony to determine whether Ambo or Parker was

lying; and (5) Parker had not challenged Pierce's identification of Parker's handwriting. Parker argues that these comments were improper because the government bears the burden of proof, and prosecutors may not make arguments that shift the burden to the defendant.

We disagree. The government's comments that its evidence was not rebutted did not have the effect of shifting the burden of proof because both the government and the district court repeatedly reminded the jury that the government alone bore the burden of proof, and that Parker did not have to prove anything. See United States v. Paul, 175 F.3d 906, 912 (11th Cir. 1999).

B.

Parker also argues that the government's comments about how Ambo had testified and how the government's evidence was uncontradicted, undenied, unrebutted, undisputed, unchallenged, and uncontroverted improperly highlighted Parker's decision not to testify at his trial.

The government impermissibly comments on the defendant's failure to testify where "(1) the statement was manifestly intended to be a comment on the defendant's failure to testify; or (2) the statement 'was of such a character that a jury would naturally and necessarily take it to be a comment on the failure of the accused to testify.'" United States v. Knowles, 66 F.3d 1146, 1162–63 (11th Cir.

13

1995).  "[A] comment by the prosecutor on the failure by defense counsel, as opposed to the defendant, to counter or explain evidence does not violate a defendant's Fifth Amendment right not to testify."  Hernandez, 145 F.3d at 1439.

Here, Parker was acting as defense counsel, so there was no plain Fifth Amendment violation in the government's comments on Parker's failure to rebut its evidence.  See Hernandez, 145 F.3d at 1439; Lejarde-Rada, 319 F.3d at 1291. The government's comments about Parker's failure to rebut its case would not naturally and necessarily be taken by the jury as a comment on his decision not to testify.  See Knowles, 66 F.3d at 1162–63.

## C.

In addition, Parker argues that the government launched an impermissible character attack on him by calling him a liar and a thief, and by stating that he hated the IRS and had treated witnesses with contempt.  We disagree.  The statements were all based on the evidence, and even if they had been inappropriate, Parker would not be entitled to a new trial.  He did not object to those comments at the time they were made, and he cannot show prejudice from the remarks because of the overwhelming evidence of his guilt.  See De La Garza, 516 F.3d at 1269.

## D.

Parker also argues that the government vouched for the veracity of its own

14

witnesses by discussing how they had met with the government and told the government the same things they had testified to at trial.

"When reviewing a defendant's 'vouching' claim, we examine whether (1) the prosecutor placed the prestige of the government behind the witness by making explicit personal assurances of the witness's credibility, or (2) the prosecutor implicitly vouched for the witness's credibility by implying that evidence not formally presented to the jury supports the witness's testimony." United States v. Arias-Izquierdo, 449 F.3d 1168, 1177–78 (11th Cir. 2006).

We conclude that the government did not improperly vouch for its witnesses. During his closing argument, Parker accused the witnesses of having rehearsed their testimony so that they would all be a "choir" singing the same tune. Accordingly, it was not plain error for the district court to allow the government to rebut this argument by asserting that there was no such rehearsal and that the witnesses' statements had not changed since they were first interviewed by the government. See United States v. Smith, 700 F.2d 627, 634 (11th Cir. 1983).

**VII.**

Parker next contends that the district court improperly instructed the jury that seeking the truth was their only interest, which invited the jurors to convict on proof less than that beyond a reasonable doubt. Where there was no objection to a

15

jury instruction at trial, we review only for plain error. United States v. Wright, 392 F.3d 1269, 1277 (11th Cir. 2004).

With the possible exception of the final sentence regarding seeking the truth, the district court's instruction was an unquestionably accurate statement of the government's burden of proof. Because the district court otherwise properly instructed the jury about reasonable doubt, and even interrupted the government's closing argument to remind the jury of this standard, we are not persuaded that the supplemental instruction's admonition to 'seek the truth' undermined the jury's understanding of the district court's instruction on reasonable doubt. Even if there were error, it is not plain.

## VIII.

Parker also contends that, even if the individual effects of the issues we have already dealt with were insufficient to warrant reversal, their cumulative effect warrants reversal.

"[T]he 'cumulative effect' of multiple errors may so prejudice a defendant's right to a fair trial that a new trial is required, even if the errors considered individually are non-reversible." United States v. Thomas, 62 F.3d 1332, 1343 (11th Cir. 1995). We address a claim of cumulative error by first considering the validity of each claim individually, and then examining any errors in the aggregate

16

and the trial as a whole to determine whether the appellant was afforded a fundamentally fair trial. United States v. Calderon, 127 F.3d 1314, 1333 (11th Cir. 1997).

As we have already explained, we are not convinced that the district court erred or plainly erred with respect to any of the issues Parker raises. Even if the district court did err, none of those errors separately or cumulatively necessitate a new trial given the strength of the evidence against Parker.

## IX.

Finally, Parkers raises several contentions relating to his sentence. He first argues that the district court violated the Sixth Amendment by making the findings of fact necessary to support the application of guidelines enhancements based on the amount of loss and Parker's role in the offense. Parker acknowledges that this argument is foreclosed by binding circuit precedent, but he invites us to reconsider our holding in United States v. Chau, 426 F.3d 1321 (11th Cir. 2005), in light of Cunningham v. California, 549 U.S. 270, 127 S. Ct. 856 (2007). In Chau, we concluded that the "use of extra-verdict enhancements in an advisory guidelines system is not unconstitutional." Chau, 426 F.3d at 1321 (quoting United States v. Rodriguez, 398 F.3d 1291, 1301 (11th Cir. 2005)). We decline Parker's invitation because we are bound by Chau under our prior panel precedent rule. See Main

Drug, Inc. v. Aetna U.S. Healthcare, Inc., 475 F.3d 1228, 1230 (11th Cir. 2007). Cunningham does not require us to revisit our earlier decision in Chau because it concerned a non-advisory sentencing system. See Cunningham, 549 U.S. at ___, 127 S. Ct. at 870.

Parker also argues that the district court clearly erred in determining the amount of loss for which he was responsible because it failed to reduce the amount to take into account the taxpayers repayment of the amount of the fraud. Where, as is the case here, there is a tax loss, a defendant's base offense level under United States Sentencing Guidelines § 2T1.4 (Nov. 2006) is taken from the tax table found in U.S.S.G. § 2T4.1. For a tax loss of more than $1,000,000 but less than $2,500,000, the base offense level is 22. U.S.S.G. § 2T4.1(I). "Tax loss" is defined in U.S.S.G. § 2T1.1, and if the offense involved a fraudulent or false tax return the tax loss includes "the total amount of loss that was the object of the offense," U.S.S.G. § 2T1.1(c)(1). Further, "[t]he tax loss is not reduced by any payment of the tax subsequent to the commission of the offense." U.S.S.G. § 2T1.1(c)(5). The district court did not err by declining to apply a credit in the amount of the later tax payments by Parker's clients against the tax loss for which Parker was responsible. The guidelines expressly provide that no such credit is to be given. U.S.S.G. § 2T1.1(c)(5).

18

Parker next argues that the district erred in assessing a four-level aggravating role enhancement. He contends that the enhancement was erroneous because his role as an office manager at the business was not sufficient to warrant such an adjustment, and because co-conspirator Pierce actively prepared fraudulent returns and received no role adjustment. Parker asserts that this enhancement and the specific offense enhancement he also received for owning a tax preparation business double counted the same conduct.

We review for clear error a district court's determination of a defendant's role in the offense. United States v. Mesa, 247 F.3d 1165, 1168 (2001). We review de novo whether there was impermissible double counting under the Guidelines. United States v. Dudley, 463 F.3d 1221, 1226 (11th Cir. 2006).

A four-level aggravating role enhancement is to be applied where "the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(a). A two-level enhancement is to be applied to an offense level calculated under U.S.S.G. § 2T1.4 where "the defendant was in the business of preparing or assisting in the preparation of tax returns." U.S.S.G. § 2T1.4(b)(1)(B). "Impermissible double counting occurs only when one part of the Guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been fully

accounted for by application of another part of the Guidelines." United States v. Bracciale, 374 F.3d 998, 1009 (11th Cir. 2004) (internal quotation marks and citation omitted).

Parker does not challenge the district court's finding with respect to the number of participants. Instead, he argues that he was not the leader of the criminal activity. We conclude that the district court did not clearly err in finding that Parker was an organizer or leader of the conspiracy. Ample evidence showed that he had organized the tax fraud scheme and led his employees in the operation of the scheme. Further, there was no impermissible double counting because the kind of harm punished under the role enhancement provisions of U.S.S.G. § 3B1.1 is not the same kind of harm accounted for under the enhancement in U.S.S.G. § 2T1.4(b)(1)(B) for persons who engage in fraudulent tax preparation for profit. One is directed at those who lead or organize criminal activity and the other at those who hold themselves out as tax preparers.

**AFFIRMED.**