[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-13582

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

JIM C. BECK,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:19-cr-00184-MHC-JSA-1

_____

Before BRANCH, GRANT, Circuit Judges, and SCHLESINGER,
* District Judge.

SCHLESINGER, District Judge:

Jim C. Beck was convicted of wire and mail fraud, money laundering, and aiding the filing of a false tax return. In this appeal, Beck makes many challenges to the district court's judgment. Finding that most of the issues do not have merit, we affirm on those issues. However, we vacate and remand the district court's decision as to one issue.

## I.

Before Jim Beck was the Georgia Insurance Commissioner, he was the general manager of Georgia Underwriting Association (GUA) and the Chief Financial Officer of the Georgia Arson Control Program (GACP). GUA was created under Georgia law to insure high-risk properties so they could get insurance because private insurance companies would not cover them. GACP is a nonprofit organization dedicated to fighting arson in Georgia, which is housed with and funded by GUA.

In June of 2018, Beck learned that a grand jury issued a subpoena to GUA. The subpoena sought documents related to Beck's employment. Thereafter, he retained legal counsel. The Government was investigating an alleged invoicing scheme where Beck

---

* The Honorable Harvey Schlesinger, United States District Judge for the Middle District of Florida, sitting by designation.

formed several entities with friends and family and invoiced his employer GUA for payment for work not performed.[1]

Before Beck's indictment but after he retained counsel for the investigation, Matthew Barfield, the co-founder of Green Tech, agreed to assist with the Government's investigation as a covert witness. The FBI, the investigative agency, knew that Beck was represented by an attorney for this investigation when agents asked Barfield to make two recorded calls to Beck. Beck made incriminating statements during these calls.

The Government obtained a search warrant for Beck's personal email account on April 25, 2019. On May 14, 2019, Beck was indicted on 38 counts for mail fraud, wire fraud, and money laundering. The grand jury issued a superseding indictment on August 14, 2019, that again charged Beck with mail fraud, wire fraud, and money laundering in connection with the Invoicing Scheme. The superseding indictment added a count for mail fraud for paying for his insurance commissioner campaign signs with GACP funds and four counts of aiding the filing of a false tax return.

Beck moved to suppress the evidence obtained from the search warrant because the warrant failed to specify a date range. Before the prosecution reviewed the results, the officer executed a second search warrant upon learning of the date range error. Beck moved

---

[1] The schemes are identified as the Green Tech Scheme, Lucca Lu Scheme, Mitigating Solutions Scheme, and Paperless Solutions Scheme (collectively "Invoicing Scheme").

to suppress the evidence of the second warrant, arguing that it was tainted by the first. Following a report and recommendation issued by the magistrate judge, the district court denied both motions. The district court denied the motion as moot as to the first warrant and held the second warrant was valid under the independent source doctrine.

Beck also moved to suppress the statements, alleging the prosecutor violated Georgia's Rule of Professional Conduct 4.2 that prohibits a lawyer from speaking to a person who the lawyer knows is represented by another lawyer ("no-contact rule"). The district court denied Beck's motion.

Following the Government's case-in-chief, Beck moved for judgment of acquittal on: counts 26-39 charging Beck with money laundering, arguing that they merge with the mail and wire fraud counts; counts 40-43 charging Beck with aiding the filing of a false tax return, arguing that the indictment did not identify whom he aided and abetted; and count 25 charging Beck with mail fraud, arguing that it was not to further the alleged scheme to defraud GUA, but GACP. The district court denied the motion.

Beck had proposed several jury instructions, such as defining "scheme to defraud" in the conjunctive "deceive *and* cheat" instead of the disjunctive "deceive *or* cheat." He also proposed a theory of defense, highlighting that deceit alone does not satisfy the intent element and sought to include contested facts, including that he was an outstanding manager of GUA and there was no evidence that he cheated anyone out of money. The district court did not

give his proposed instructions, nor his proposed theory of defense. The district court did instruct the jury that "[p]roving intent to deceive alone, without the intent to cause loss or injury, is not sufficient to prove intent to defraud."

On July 27, 2021, the jury returned a guilty verdict on all counts. The district court imposed restitution on the tax convictions to be due and payable immediately.

## II.

We review "a district court's denial of a motion to suppress evidence for clear error as to factual findings and de novo as to its application of the law." *United States v. Watkins*, 760 F.3d 1271, 1282 (11th Cir. 2014). We review de novo a district court's determination that probable cause supported the issuance of a search warrant. *United States v. Barron-Soto*, 820 F.3d 409, 415 (11th Cir. 2016). Clear-error review is deferential, so "we will not disturb a district court's findings unless we are left with a definite and firm conviction that a mistake has been committed." *United States v. Sosa*, 777 F.3d 1279, 1300 (11th Cir. 2015) (quotation omitted).

We review "the legal correctness of jury instructions de novo" and their phrasing for abuse of discretion. *United States v. Prather*, 205 F.3d 1265, 1270 (11th Cir. 2000); *United States v. Starke*, 62 F.3d 1374, 1380 (11th Cir. 1995). "Defendants are not entitled to the jury instructions using the precise language they request where the district court's 'charge adequately addresses the substance of the defendant's request.'" *United States v. Horner*, 853 F.3d 1201, 1210 (11th Cir. 2017) (quoting *United States v. Silverman*, 745 F.2d 1386,

1396 (11th Cir. 1984)). In other words, "[s]o long as the instructions accurately reflect the law, the trial judge is given wide discretion as to the style and wording employed in the instructions." *Starke*, 62 F.3d at 1380.

In addition, a defense theory instruction is not required if the "charge given adequately covers the substance of the requested instruction." *United States v. Ndiaye*, 434 F.3d 1270, 1293 (11th Cir. 2006). The district court's refusal to give a specific instruction on defendant's theory of defense is reversible error "only when (1) the proposed instruction is correct, (2) the instruction was not addressed in the charge actually given, and (3) the failure to give the requested instruction seriously impaired the defendant's ability to present an effective defense." *Id.*

The denial of a motion for judgment of acquittal is reviewed de novo based on the sufficiency of the evidence and questions of statutory interpretation. *United States v. Gari*, 572 F.3d 1352, 1359 (11th Cir. 2009); *United States v. Zuniga-Arteaga*, 681 F.3d 1220, 1222-23 (11th Cir. 2012). And we "view the evidence in the light most favorable to the Government and draw all reasonable factual inferences in favor of the jury's verdict." *Gari*, 572 F.3d at 1359.

We review a claim that the district court lacked the authority to impose restitution de novo. *United States v. Dickerson*, 370 F.3d 1330, 1335 (11th Cir. 2004).

## III.

Beck appeals his convictions on numerous issues. He alleges the district court erred by refusing to suppress evidence from an

alleged invalid warrant and recorded conversations of an under-cover call in violation of Georgia's no-contact rule. He contends the district court erred because it did not give his proposed jury instructions and proposed theory of defense. He also alleges the district court erred in denying his motion for judgment of acquittal because: the charges for money laundering merged with the scheme to defraud; the aiding and abetting tax counts of the indictment failed to identify whom he aided; and a mail fraud count was for using GACP funds and were not in furtherance of a scheme to defraud GUA. Finally, he argues the district court erred in imposing restitution to the IRS to be paid immediately.

### A.     The Search Warrants

Beck asserts the first search of his email violated the Fourth Amendment because the warrant failed to specify a time limit for responsive emails. The Government responds that the first warrant is moot because it did not use any of the information collected from that search.

As to the second warrant Beck asserts it is invalid because it bears the fruit of the poisonous tree having been tainted by the first illegal search. Beck contends that because the first search warrant produced results, the Government knew there were responsive emails when it sought the second warrant. The Government argued that the officer viewed none of the produced materials. It also contends there were no differences between the first and second affidavits supporting the search warrant aside from the date range and an acknowledgment of the first search warrant.

We need not decide whether the first warrant with no date range violated the Fourth Amendment "because even if a Fourth Amendment violation occurred, the independent source doctrine allow[s] the admission of the evidence found during . . . " the second search. *United States v. Bush*, 727 F.3d 1308, 1316 (11th Cir. 2013).

The Fourth Amendment provides "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause." U.S. Const. amend. IV. The exclusionary rule prohibits introduction of evidence that the police obtained unconstitutionally. *Mapp v. Ohio*, 367 U.S. 643, 655 (1961). But this rule has exceptions. Relevant here is the independent source doctrine, which holds that unlawfully obtained evidence is admissible if the government also obtains that evidence through an independent legal source. *See Murray v. United States*, 487 U.S. 533, 542 (1988) (holding that evidence found in plain sight during an illegal entry would be admissible if the second, legal, search would have occurred even if the first search had not happened); *Segura v. United States*, 468 U.S. 796, 814 (allowing the admission of evidence found in a home first entered illegally, but later entered based on a search warrant "wholly unconnected" to the initial, illegal entry).

The independent source doctrine recognizes that the goal of the exclusionary rule is to put "the police in the same, not a worse, position that they would have been in if no police error or

misconduct had occurred." *Nix v. Williams*, 467 U.S. 431, 443 (1984); *see also Murray*, 487 U.S. at 537. A warrant obtained after an unlawful search is not an independent source if either the illegally obtained evidence affected the court's decision to issue the warrant or the illegally obtained evidence affected the government's decision to apply for the warrant. *Murray*, 487 U.S. at 542.

The Eleventh Circuit applies *Murray* by first "excis[ing] from the search warrant affidavit any information gained during the arguably illegal initial [search] and determine whether the remaining information is enough to support a probable cause finding." *United States v. Noriega*, 676 F.3d 1252, 1260 (11th Cir. 2012) If the remaining information establishes probable cause, then, we "determine whether the officer's decision to seek the warrant was 'prompted by' what he had seen during the arguably illegal [search]." *Id.* (quoting *Murray*, 487 U.S. at 542). So "[i]f the officer would have sought the warrant even without the preceding illegal search, the evidence seized under the warrant is admissible." *Bush*, 727 F.3d at 1316.

Beck's sole basis for suppression of the evidence is the first warrant failed to specify a time range for responsive emails. The only information in the second warrant application that needs to be excised is the fact that the first search produced responsive results. Beck does not dispute the warrant application otherwise contained sufficient information to establish probable cause. And even if he had, the search warrant application contained plenty of untainted evidence to establish probable cause. FBI Special Agent Dunn's affidavit for the second warrant detailed that he saw email

correspondence turned over by Barfield and Sonya McKaig, founder of Lucca Lu, which showed Beck used his personal email in the Invoicing Scheme. Presented with the amount and nature of evidence, the magistrate judge would have issued the search warrant without the discussion of the first warrant. This conclusion is further supported because the magistrate judge issued the first warrant with almost identical information.

Next, we address the second step of *Murray*: did the first warrant with no date range affect the government's decision to apply for the second warrant? Nothing in the record suggests Agent Dunn's decision to seek the second search warrant was prompted by the information gleaned from the results of the first. He viewed none of the content pulled from the first search. It was the filing of the Motion to Suppress by Beck that alerted Agent Dunn to the error. Only a preliminary filter team started an initial review for privileged information. Nothing in the record suggests the preliminary filter team communicated anything to Agent Dunn regarding the content of the emails obtained by the first search. The district court found there were no meaningful differences in the affidavits except for the date range. Beck urges us to reconsider the district court's resolution, but there is no evidence to the contrary.

Beck's protests do not show that the district court's factual determinations were clearly erroneous. *Bush*, 727 F.3d at 1315 n.3. The district court faithfully applied the standards laid out in *Murray* to determine the government's motives in filing the second search

warrant application. It carefully weighed the evidence from both sides.

The district court closely examined the affidavits supporting the warrants and determined the warrants were nearly identical, tracked the issue with its superior vantage point, and presided over the presentation of all the evidence. This decision was well-reasoned and well-supported, so we should not reverse it.

Though the government should not profit from its mistakes, neither should it be placed in a worse position than it would otherwise have occupied. *See Murray*, 487 U.S. at 542. Thus, we affirm.

## B.    Georgia's No-Contact Rule

Beck argues the district court erred in failing to suppress the recorded conversations with him and the cooperating witness, Barfield. He asserts the conversations are inadmissible because the Government violated Georgia's no-contact rule. The Government knew Beck was represented by a lawyer for the investigation, but still used Barfield to solicit incriminating statements from Beck before his indictment.

Georgia Rule of Professional Conduct 4.2 provides:

RULE. 4.2 COMMUNICATION WITH PERSON REPRESENTED BY COUNSEL

(a) A lawyer who is representing a client in a matter shall not communicate about the subject of the

12                    Opinion of the Court                    21-13582

> representation with a person[2] the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or court order.
>
> (b) Attorneys for the State and Federal Government shall be subject to this Rule in the same manner as other attorneys in this State.

The Georgia Bar's no-contact rule "imposes restrictions that go beyond" the federal constitutional provisions. Rule 4.2 of the Georgia Rules of Professional Conduct, Bar Rule 4-102, Comment 2.

We need not reach whether the Government violated Georgia's no-contact rule because we have held that "a state rule of professional conduct cannot provide an adequate basis for a federal court to suppress evidence that is otherwise admissible." *United States v. Lowery*, 166 F.3d 1119, 1124 (11th Cir. 1999). And "we are bound to follow a prior binding precedent unless and until it is overruled by this court en banc or by the Supreme Court." *In re Burgest*, 829 F.3d 1285, 1287 (11th Cir. 2016) (quoting *United States v. Vega-Castillo*, 540 F.3d 1235, 1236 (11th Cir. 2008)). Beck presented no other basis for suppressing the recordings other than an alleged violation of Rule 4.2. Thus, the district court did not err in denying the motion to suppress Beck's statements made to an undercover informant pre-indictment.

---

[2] Because the rule uses "person" rather than "party" the protection extends beyond the Sixth Amendment and attaches pre-indictment. *See e.g.*, *United States v. Ryans*, 903 F.2d 731, 739 (10th Cir. 1990).

### C.    Jury Instructions

Beck contends the district court committed reversible error because (1) the court used the disjunctive "deceive or cheat" in defining "scheme to defraud"; (2) omitted "and cheat" in the good faith instruction; and (3) failed to give his theory of defense instruction. He asserts these instructions misled the jury into believing it could convict Beck of mail and wire fraud for only intending to deceive GUA without harming it and so he must have a new trial.

The district court gave the Eleventh Circuit Pattern Jury Instruction for wire and mail fraud. The district court instructed:

> The term "scheme to defraud" means any plan or course of action intended to deceive *or* cheat someone out of money or property by using false or fraudulent pretenses, representations, or promises . . . to act with "intent to defraud" means to act knowingly and with the specific intent to use false or fraudulent pretenses, representations, or promises to cause loss or injury. *Proving intent to deceive alone, without the intent to cause loss or injury, is not sufficient to prove intent to defraud*." (emphasis added).

Then the district court instructed:

> "Good Faith" is a complete defense to a charge that requires intent to defraud . . . [b]ut an honest belief that a business venture would ultimately succeed does not constitute good faith if the Defendant intended to deceive others by making representation the Defendant knew to be false or fraudulent.

"On appeal, we examine whether the jury charges, considered as a whole, sufficiently instructed the jury so that the jurors understood the issues and were not misled." *Starke*, 62 F.3d at 1380 (quoting *Wilkinson v. Carnival Cruise Lines, Inc.*, 920 F.2d 1560, 1569 (11th Cir. 1991)).

Our precedent does instruct that mail and wire fraud require a defendant to intend to deceive the victim *and* harm or injure it. *United States v. Takhalov*, 827 F.3d 1307, 1312–13 (11th Cir. 2016). But Beck fails to show that the district court committed a reversible error because the district court addressed the substance of the instruction in its charge.

Here, when the instructions are viewed in context, the district court's charge did not permit the jury to find intent proved solely by an intent to deceive. The jury was specifically instructed that, "proving intent to deceive alone, without the intent to cause loss or injury, is not sufficient to prove intent to defraud." The district court did not err in omitting "and cheat" in its good faith instructions for the same reasons—when the jury instructions are viewed in context and considered as a whole—the district court's instruction properly addressed the *mens rea* requirement. Notably, we recently found no reversible error in using the "intent to defraud" pattern good faith instructions because "the jury could not have convicted [the defendant] without finding that his misrepresentations were made with an intent to cause loss or injury to the individuals from whom he solicited money, *i.e.*, to obtain money to

which he was not entitled." *United States v. Watkins*, 42 F.4th 1278, 1287 (11th Cir. 2022).

Beck's contention that the district court committed reversible error by failing to give his theory of defense also fails. A court need not give a theory of defense instruction "when the charge given adequately covers the substance of the requested instruction." *Ndiaye*, 434 F.3d at 1293. Neither is a district court obligated to give a proposed theory-of-defense instruction that is partisan, argumentative, or seeks to place the defendant's "desired factual findings into the mouth of the court." *United States v. Paradies*, 98 F.3d 1266, 1287 (11th Cir. 1996) (quoting *United States v. Barham*, 595 F.2d 231, 245 (5th Cir. 1979));[3] *see also United States v. Feldman*, 936 F.3d 1288, 1304 (11th Cir. 2019).

Beck's theory of defense included contested facts such as that Greentech and Paperless Solutions actually worked for GUA, that there was no evidence that Beck intended to harm GUA, that Beck was an outstanding general manager of GUA, that and there was no evidence that Beck cheated anyone out of money. Because the proposed instruction was more of a jury argument than a charge, the district court did not abuse its discretion. *Paradies*, 98 F.3d 1266 at 1287.

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as precedent the decisions of the former Fifth Circuit handed down prior to October 1, 1981.

The rest of Beck's theory of defense which includes defining "intent to defraud" was adequately covered in the district court's instructions. In fact, the jury instruction given matches Beck's proposed language verbatim. *United States v. US Infrastructure, Inc.*, 576 F.3d 1195, 1213 (11th Cir. 2009) ("Indeed, the words they claim the court should have used are virtually identical to the words the court actually used.").

And finally, Beck was not seriously impaired in his ability to present an effective defense. Beck presented evidence that "GUA made a profit for the first time in 30 years and that Mr. Beck would not have been paid money from any of the vendors, like Greentech, Lucca Lu, Mitigating Solutions, or Paperless Solutions, if those vendors did not provide a revenue uplift for GUA." Accordingly, the district court did not abuse its discretion by failing to give Beck's proposed instructions.

### D.    Merger

Beck contends that the charges for money laundering merge with the scheme to defraud because the transactions are part of the "core scheme" or a "central component" of the underlying criminal activity. In other words, he argues that because the money charges were part of the overall scheme to defraud, that the underlying crime was not a completed crime. He avers that mail and wire fraud are not complete until the overall scheme is complete. In support, Beck relies on the plurality opinion of *United States v. Santos*, for the proposition that "proceeds" cannot mean "receipts" and instead "proceeds" means "profits." 553 U.S. 507, 525-26 (2008)

(Stevens, J., concurring). Holding otherwise would create a merger problem as identified in Justice Scalia's opinion. *Id.* at 515.

While some circuits, like the Sixth and Ninth, apply a broad view of *Santos*'s "profits" definition to all underlying offenses, the Eleventh Circuit does not. Our circuit has routinely held that *Santos* has "limited precedential value" and *Santos*'s "profits" definition of "proceeds" only applies to those cases in which the underlying specified unlawful activity is a gambling enterprise. *United States v. Jennings*, 599 F.3d 1241, 1252 (11th Cir. 2010); *United States v. Demarest*, 570 F.3d 1232, 1242 (11th Cir. 2009). In *Jennings*, the court held there was no error when the defendant was charged with wire and mail fraud and money laundering. 599 F.3d at 1244. The defendant relied on *Santos*, arguing that the conviction for money laundering must be overturned because "the government cannot prove the money at issue was the profits of illegal activity as opposed to receipts." *Id*. The court held that the definition of proceeds including receipts and profits binds the court. *Id.*

Further, our precedent forecloses Beck's argument that money laundering charges only occur once the scheme is complete. *United States. v. Silvestri*, 409 F.3d 1311, 1334–1335 (11th Cir. 2005) (mail fraud is completed upon the mailing of the fraudulent checks). Mail and wire fraud "punishes not the creation of a scheme to defraud, but each execution of that scheme by use of interstate wire transmissions" or mailings, so the crime is complete when the mailing or wire is sent, not when the fraudulent scheme comes to an end. *United States v. Williams*, 527 F.3d 1235, 1243 (11th Cir.

2008). *See also United States v. Gray*, 367 F.3d 1263, 1270 (11th Cir. 2004); *Silvestri*, 409 F.3d at 1334–35.

Although our review is de novo, we are bound by a previous panel decision, unless "it is overruled or undermined to the point of abrogation by the Supreme Court or by this court sitting *en banc*." *United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008). Here, because Beck's actions did not involve receipts from an unlicensed gambling operation and no Supreme Court opinion overrules this circuits previous decisions, this court is bound by previous Eleventh Circuit opinions. Because Beck's sole argument is that there can be no proceeds until the whole scheme is complete, he has forfeited any argument that any particular money laundering count must be vacated because the mailing or wire has not yet occurred. So the district court's denial of Beck's motion for acquittal of the money laundering charges is affirmed.

### E.    Aiding and Abetting

Beck contends that because Counts 40-43 of the indictment fail to identify whom he aided in filing of the false tax returns in violation of 26 U.S.C. § 7206(2), the counts must be dismissed. He asserts allowing evidence of him aiding his tax preparer is a constructive amendment that is per se reversible error.

A constructive amendment occurs when "the essential elements of the offense contained in the indictment are altered . . . to broaden the possible bases for conviction beyond what is contained in the indictment." *United States v. Feldman*, 931 F.3d 1245, 1260 (11th Cir. 2019). To be convicted under 26 U.S.C. § 7206(2), the

defendant must have "(1) willfully and knowingly aided or assisted (2) in the preparation or filing of a federal income tax return (3) that contained material statements that the defendant knew to be false." *United States v. Kottwitz*, 614 F.3d 1241, 1269 (11th Cir. 2010), *opinion withdrawn in part on denial of reh'g*, 627 F.3d 1383 (11th Cir. 2010) (quoting *United States v. Parker*, 277 F. App'x 952, 957 (11th Cir. 2008)). While "[o]ne cannot aid or abet himself" *United States v. Martin*, 747 F.2d 1404, 1407 (11th Cir. 1984), the preparer/filer of tax returns need not be charged in the indictment and can be an innocent party. *United States v. Wolfson*, 573 F.2d 216, 218 (5th Cir. 1978). Further a defendant "does not have to sign or prepare the return to be amenable to prosecution. If it is proved . . . that he knowingly gave a false appraisal with the expectation it would be used . . . . on a tax return, it would constitute a crime" *Wolfson*, 573 F.2d at 225.

Here, there was no constructive amendment to the indictment at trial. The indictment identifies the federal income tax returns contained statements Beck knew to be false. The failure to allege how Beck willfully and knowingly aided or assisted does not alter an essential element so long as the indictment alleges that he did willfully and knowingly aid and assist. The government did not need to allege who actually filed the federal tax returns. Thus, we affirm.

### F.    Mail Fraud on GACP

Beck asserts that the district court erred in denying Beck's motion for a judgment of acquittal on Count 25, which is a mail

fraud charge for using GACP funds for his insurance commissioner campaign signs. He asserts the mail fraud was not in furtherance of a scheme to defraud GUA, as the indictment alleges, and the evidence did not establish a sufficient corporate link between GUA and GACP.

While GUA and GACP are legally distinct entities, the evidence at trial showed a sufficient link between GACP and GUA to support the jury's verdict. Beck was GUA's general manager and GACP's chief financial officer. Beck told a GUA employee to pay for his campaign signs with GACP funds. All of GACP's funds come from GUA. GACP was also housed in GUA's office. Because there is a sufficient corporate link, the jury could reasonably conclude that GUA was defrauded when Beck caused the GACP funds to be used for his campaign. Accordingly, we affirm.

### G.    Restitution

Beck argues the district court erred by ordering that the restitution on the tax charges was to be paid immediately. He argues that statute only permits restitution to the IRS to be payable as a condition of supervised release. The government agrees with Beck's arguments on this claim.

"A federal district court has 'no inherent authority to order restitution, and may do so only as explicitly empowered by statute.'" *Dickerson*, 370 F.3d at 1335 (quoting *United States v. Hensley*, 91 F.3d 274, 276 (1st Cir.1996)). 18 U.S.C. § 3583 allows restitution to the IRS for tax offenses to be imposed "as an explicit condition of supervised release." *See also United States v. Nolan*, 472 F.3d 362,

382 (5th Cir. 2002) ("Restitution to the IRS may be imposed as a condition of supervised release under § 3583 . . . ."). But "'a restitution award due prior to the commencement of a term of supervised release is a component of the sentence, not a condition of supervised release,' and is therefore unauthorized." *United States v. Bolton*, 908 F.3d 75, 97 (5th Cir. 2018) (quoting *United States v. Westbrooks*, 858 F.3d 317, 327 (5th Cir. 2017)). Here, the district court's order imposing the restitution to be paid immediately to the IRS was impermissible, as it was not a condition of supervised release. We agree with both parties that the district court erred in doing so, and we vacate the district court's decision on this point and remand for further proceedings.

## IV.

The judgment of the district court is **VACATED AND REMANDED IN PART** and **AFFIRMED IN PART**.